USDC SCAN INDEX SHEET

















JPP    9/29/03    13:48
3:03-CV-01927   MACOVIAK V. PROVIDENT LIFE
*1*
*CMP.*

1   Robert K. Scott , SBN 67466
    Joel S. Poremba, SBN 195722
2   LAW OFFICES OF ROBERT K. SCOTT
    7700 Irvine Center Drive, Suite 605
3   Irvine, CA 92618
    Telephone: (949) 753-4950
4   Facsimile: (949) 753-4949

5   Douglas K. deVries, SBN 70633
    deVRIES LAW FIRM
6   1792 Tribute Road, Suite 480
    Sacramento, CA 95815
7   Telephone: (916) 473-4343
    Facsimile: (916) 473-4342

8
    Attorneys for Plaintiff,
9   JOHN MACOVIAK, M.D.



FILED

03 SEP 26 PM 4: 03

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____ DEPUTY

10

11                   UNITED STATES DISTRICT COURT

12               SOUTHERN DISTRICT OF CALIFORNIA

13

14   JOHN MACOVIAK, M.D., an individual,    Case No. 03 CV 1927 BTM(LAB)

15                       vs.                 COMPLAINT

16   PROVIDENT LIFE AND ACCIDENT            1.   BREACH OF CONTRACT
17   INSURANCE COMPANY;
     UNUMPROVIDENT CORPORATION;            2.   BREACH OF THE DUTY OF
18   and DOES 1 through 50, inclusive,           GOOD FAITH AND FAIR
                                                 DEALING
19                  Defendants.

20                                          JURY DEMAND
21

22

23                        GENERAL ALLEGATIONS

24        1.      Plaintiff, JOHN MACOVIAK, M.D., (hereinafter "MACOVIAK"), is currently a

25   resident and citizen of the County of San Diego, State of California, but at all relevant times

26   herein, was a resident and citizen of the County of Los Angeles, State of California.

27

28

LAW OFFICES OF
ROBERT K. SCOTT
A PROFESSIONAL CORPORATION
7700 IRVINE CENTER DRIVE, SUITE 605
IRVINE, CALIFORNIA 92618
TELEPHONE (949) 753-4950  FAX (949) 753-4949
EMAIL: mail@robertkscott.com   www.robertkscott.com



2.      Defendant, PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY, (hereinafter "PROVIDENT") is, and at all relevant times herein, was, a corporation authorized to transact, and was in fact transacting, the business of insurance in the State of California.

3.      Defendant,      UNUMPROVIDENT      CORPORATION,      (hereinafter "UNUMPROVIDENT"), is, and at all relevant times herein, was, a corporation authorized to transact, and was in fact transacting, the business of insurance in the State of California. However, for purposes of clarity and brevity, both PROVIDENT and UNUMPROVIDENT will be known collectively hereinafter as "UNUM."

4.      The true names and capacities, whether individual, corporate, associate, or otherwise, of UNUM Does 1 through 50, inclusive, are unknown to MACOVIAK, who therefore sues said UNUM by such fictitious names. MACOVIAK is informed and believes and thereon alleges that each of UNUM designated herein as a Doe is legally responsible in some manner for the events and happenings referred to herein and legally caused injury and damages proximately thereby to MACOVIAK. MACOVIAK will seek leave of this Court to amend this Complaint to insert their true names and capacities in place and instead of the fictitious names when they become known to MACOVIAK.

5.      At all times herein mentioned, unless otherwise indicated, UNUM were the agents and employees of each of the remaining UNUM, and were at all times acting within the purpose and scope of said agency and employment, and each Defendant has ratified and approved the acts of his agent.

6.      In or about November, 1992, MACOVIAK completed an application for disability insurance in San Diego County, California to be underwritten by UNUM. The disability policy promised that should MACOVIAK be disabled from his usual occupation as a cardiothoracic surgeon, heart/lung transplant surgeon and professor at the U.C.S.D. School of

LAW OFFICES OF
ROBERT K. SCOTT
A PROFESSIONAL CORPORATION
7700 IRVINE CENTER DRIVE, SUITE 605
IRVINE, CALIFORNIA 92618
TELEPHONE (949) 753-4950   FAX (949) 753-4949
EMAIL: mail@robertkscott.com   www.robertkscott.com

Medicine that the Policy would pay benefits for the duration of his disability. At the time of said application, MACOVIAK was in good health.

7.     MACOVIAK divulged his medical history on the application and signed a medical authorization(s) permitting UNUM to obtain all his medical records in order to properly evaluate him as an insurance risk. Impressed by the glowing promises of the sales presentation and in reliance on the promised protection of the UNUM'S coverage, MACOVIAK filed an application and paid a deposit premium for the proposed Policy and continually made premium payments to date. At no times were there any acts of hesitation, or cause, for UNUM to reject MACOVIAK'S premium payments; and in fact, UNUM has accepted all of MACOVIAK'S premium payments to date.

8.     Effective December 24, 1992, UNUM issued a guaranteed policy for total disability to MACOVIAK, Policy Number 06-337-5079055, (hereinafter "the Policy"), which promised to pay MACOVIAK $12,000 per month for life as long as a disability began before the insured's 65th birthday. Benefits would become due the insured should MACOVIAK be prevented by sickness or accident/injury from performing the duties of his occupation as a cardiothoracic surgeon, heart/lung transplant surgeon and professor at the U.C.S.D. School of Medicine. At the time MACOVIAK made a claim for benefits under the Policy for his disability, he was approximately 52 years of age. A true and correct copy of the Policy is attached hereto as Exhibit A and incorporated by reference.

9.     The Policy was entered into by MACOVIAK within the jurisdiction of the above-entitled Court and required the payment of benefits within the jurisdiction of the above-entitled Court for a total amount to be shown at the time of trial.

10.     The Policy at all times since its inception has remained in force. All premiums due under the Policy have been paid, and all conditions on the part of MACOVIAK to be

LAW OFFICES OF
ROBERT K. SCOTT
A PROFESSIONAL CORPORATION
7700 IRVINE CENTER DRIVE, SUITE 605
IRVINE, CALIFORNIA 92618
TELEPHONE (949) 753-4950  FAX (949) 753-4949
EMAIL: mail@robertkscott.com  www.robertkscott.com

1   performed have been performed by him.

2       11.    After inception of the Policy, MACOVIAK became totally disabled as a result of

3   Bipolar II Disorder, among other things.  Said disorder forced MACOVIAK to discontinue his

4   employment as a surgeon and professor due to his inability to continue undertaking complicated

5   and high risk surgeries, patient contact and his teaching duties at the medical school.  As a

6   person who has Bipolar II Disorder, MACOVIAK is not able to function in the capacity for

7   which he was insured by UNUM, namely, as a cardiothoracic surgeon, heart/lung transplant

8   surgeon and professor at the U.C.S.D. School of Medicine.  Further, and as importantly,

9   MACOVIAK is no longer able to function in a safe manner and practice medicine within the

10  standards of care which his profession demands.  To date, MACOVIAK continues to suffer

11  ongoing mental and physical problems which prevent him safely and properly from functioning

12  as a surgeon and professor doing the surgeries and procedures he used to be capable of

13  performing on a regular basis.  He has not been able to undertake the material and substantial

14  duties of his occupation since approximately January, 2002 for which he was insured by UNUM.

15  This forced MACOVIAK to file his claim for disability benefits with UNUM.  To date,

16  MACOVIAK continues to suffer ongoing pain and symptoms from his disorder.

17

18       12.    As a result of MACOVIAK'S disorder, he cannot work as a cardiothoracic

19

20  surgeon, heart/lung transplant surgeon and professor at the U.C.S.D. School of Medicine, due to

21  the degree of stress his occupation routinely causes.  Symptoms of Bipolar II Disorder are often

22  triggered by stress and there is arguably no greater occupational stress than that of a

23  cardiothoracic surgeon and heart/lung transplant surgeon practicing high-risk surgery.  Said

24  environment often produced the serious symptoms of Bipolar II Disorder for MACOVIAK.  One

25  issue, among many, is patient safety, an issue not easily ignored given MACOVIAK'S

26

27

28  occupation and disorder.  The medications MACOVIAK takes for said disorder present

LAW OFFICES OF
ROBERT K. SCOTT
A PROFESSIONAL CORPORATION
7700 IRVINE CENTER DRIVE, SUITE 605
IRVINE, CALIFORNIA 92618
TELEPHONE (949) 753-4950  FAX (949) 753-4949
EMAIL: mail@robertkscott.com  www.robertkscott.com

1   additional risks that manifest the same or similar safety concerns for patients.  Further, as a

2   cardiothoracic surgeon and heart/lung transplant surgeon with Bipolar II Disorder, MACOVIAK

3   remains an impossible hire in his specialty.  It is a disorder that he would be compelled to

4   disclose to any prospective hospital and university as an employer, and more than likely a

5   disclosure he would have to make to his cardiothoracic and transplant patients.  MACOVIAK'S

6   profession requires that he be able to function without limitation and his disorder, and side

7   effects from medication to combat it, have rendered him totally disabled from his occupation.

8

9        13.     MACOVIAK filed a claim for disability benefits in accordance with the terms of

10   the Policy and applicable law and furnished proof of loss in the form(s) required by UNUM.

11   Disability benefits were paid by UNUM to MACOVIAK under the terms of the Policy from

12   approximately May, 2002 to the present.  It is anticipated that said benefits will continue to be

13   paid to MACOVIAK through November, 2003 pursuant to a letter from UNUM that informed

14   MACOVIAK that benefits will terminate after the November, 2003 payment.

15

16        14.     On August 29, 2003 UNUM wrote to MACOVIAK to inform him that his claim

17   for benefits was terminated because he is not disabled and therefore not eligible for further

18   benefits.  A true and correct copy of this letter is attached hereto as Exhibit B and incorporated

19   by reference.   The letter states that $36,000 in additional benefits would be paid to

20   MACOVIAK; benefits which cover a period of disability through November, 2003 but which

21   terminate thereafter when UNUM considers the claim closed.  On page 4 of said letter, it is clear

22   UNUM believes MACOVIAK merely had "interpersonal conflict[s]" at his place of employment

23   and minimizes the disorder at issue, namely Bipolar II Disorder which is what in fact disabled

24   him from his occupation.  Further, on page 4, UNUM'S position is that MACOVIAK need only

25   be "motivated to return to work in cardiothoracic surgery" while ignoring the issue of patient

26

27   safety and the effect that stressful high-risk surgeries have on the disorder.  Additionally, UNUM

28

LAW OFFICES OF
ROBERT K. SCOTT
A PROFESSIONAL CORPORATION
7700 IRVINE CENTER DRIVE, SUITE 605
IRVINE, CALIFORNIA 92618
TELEPHONE (949) 753-4950 FAX (949) 753-4949
EMAIL: mail@robertkscott.com   www.robertkscott.com

1   failed to carefully consider the side effects medications prescribed for the disorder also present to

2   patient safety.

3        15.    UNUM'S Disability Income Policy specifically promises that a claimant qualifies

4   for benefits if he/she is under the regular care of a physician for the total disability.  UNUM'S

5   Policy defines **Total Disability** as:

6

7          "because of Injury or Sickness:

8           1.  you are not able to perform the substantial and material duties of
             your occupation; and

9

10          2.  you are receiving care by a *Physician which is appropriate for*
            the condition causing the disability.  We will waive this require-

11              ment when continued care would be of no benefit to you."

12  UNUM'S Policy defines **Injury** as:

13         "accidental bodily injuries occurring while your policy is in force."

14  UNUM'S Policy defines **Sickness** as:

15

16         "sickness or disease which is first manifested while your policy is
       in force."

17       16.    MACOVIAK and/or his physician(s) filed Monthly Progress Report(s) and/or

18  Disclosure Authorizations with UNUM and included updated report(s) from treating physician(s)

19  as to his ongoing disability.  The Policy itself provides benefits that when the Insured is totally

20  or partially disabled, UNUM will pay the benefits provided in this Policy for loss due to injury or

21  sickness.  UNUM have taken up the position to continue paying benefits to MACOVIAK, if any,

22

23  under a reservation of rights without good cause.

24       18.    MACOVIAK disclosed his complete medical history thoroughly and in good faith

25  and authorized UNUM to obtain records of his medical treatment history.  UNUM had actual or

26

27  inquiry notice of every aspect of Plaintiff's medical condition(s); thus the policy limitation for

28  "pre-existing conditions" cannot, and does not, apply.

LAW OFFICES OF
ROBERT K. SCOTT
A PROFESSIONAL CORPORATION
7700 IRVINE CENTER DRIVE, SUITE 605
IRVINE, CALIFORNIA 92618
TELEPHONE (949) 753-4950  FAX (949) 753-4949
EMAIL: mail@robertkscott.com   www.robertkscott.com

**FIRST CAUSE OF ACTION**

**BREACH OF CONTRACT**

**(Against Defendants, Provident Life and Accident Insurance Company and**

***UnumProvident Corporation)***

17.  MACOVIAK hereby incorporates each and every paragraph of the General Allegations as though fully set forth in this cause of action.

18.  Effective December 24, 1992, UNUM issued a guaranteed policy for  total disability to MACOVIAK, Policy Number 06-337-5079055, (hereinafter "the Policy"), which promised to pay MACOVIAK $12,000 per month for life as long as the disability begins before the insured's 65th birthday should MACOVIAK be prevented by sickness or accident/injury from performing the duties of his occupation as a  cardiothoracic surgeon, heart/lung transplant surgeon and professor at the U.C.S.D. School of Medicine.  At the time MACOVIAK made a claim for benefits under the Policy for his disability, he was approximately 52 years of age. Exhibit A.

19.  MACOVIAK has performed all of the duties on her part to be performed including the payment of premiums and submission of "proof of loss."

20.  After inception of the Policy, MACOVIAK became totally disabled as a result of Bipolar II Disorder, among other things.  Said disorder forced MACOVIAK to discontinue his employment as a surgeon and professor due to his inability to continue undertaking complicated and high risk surgeries, patient contact and teaching at the medical school.  With the disorder, MACOVIAK is not able to function in the capacity for which he was insured by UNUM, namely, as a cardiothoracic surgeon, heart/lung transplant surgeon and professor at the U.C.S.D. School of Medicine.  Further, and as importantly, MACOVIAK is no longer able to function in a safe manner and practice medicine within the standards of care which his profession demands.

LAW OFFICES OF
ROBERT K. SCOTT
A PROFESSIONAL CORPORATION
7700 IRVINE CENTER DRIVE, SUITE 605
IRVINE, CALIFORNIA 92618
TELEPHONE (949) 753-4950  FAX (949) 753-4949
EMAIL: mail@robertkscott.com  www.robertkscott.com

To date, MACOVIAK continues to suffer ongoing physical problems which prevent him safely and properly from functioning as a surgeon and professor doing the surgeries and procedures he used to be capable of performing on a regular basis. He has not been able to undertake the material and substantial duties of his occupation since approximately January, 2002 for which he was insured by UNUM. This has forced MACOVIAK to file his claim for disability benefits with UNUM. To date, MACOVIAK continues to suffer ongoing pain and symptoms from his disorder.

21.    MACOVIAK submitted his claim for disability benefits to UNUM in accordance with the terms of the Policy and the applicable law and promptly furnished proof of loss under the policy in the form requested by UNUM.

22.    Despite the express promise set forth in the Policy to pay claims immediately upon receipt of proof of loss and without reservation, on August 29, 2003 UNUM wrote to MACOVIAK to inform him that his claim for benefits was terminated because he is not disabled and therefore not eligible for further benefits. Exhibit B. The letter states that $36,000 in additional benefits would be paid to MACOVIAK; benefits which cover a period of disability through November, 2003 but which terminate thereafter when UNUM considers the claim closed. On page 4 of said letter, it is clear UNUM believes MACOVIAK merely had "interpersonal conflict[s]" at his place of employment and minimizes the disorder at issue, namely Bipolar II Disorder which is what in fact disabled him from his occupation. Further, on page 4, UNUM'S position is that MACOVIAK need only be "motivated to return to work in cardiothoracic surgery" while ignoring the issue of patient safety and the effect that stressful high-risk surgeries have on the disorder. Additionally, UNUM failed to carefully consider the side effects medications prescribed for the disorder also present to patient safety.

///

LAW OFFICES OF
ROBERT K. SCOTT
A PROFESSIONAL CORPORATION
7700 IRVINE CENTER DRIVE, SUITE 605
IRVINE, CALIFORNIA 92618
TELEPHONE (949) 753-4950   FAX (949) 753-4949
EMAIL mail@robertkscott.com   www.robertkscott.com

23.    As a direct and proximate result of UNUM'S breach of the insurance contract, MACOVIAK has suffered contractual damages under the Policy and other, incidental damages and out-of-pocket expenses, all in a sum to be determined at the time of trial.

## SECOND CAUSE OF ACTION

### BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

### (Against Defendants, Provident Life and Accident Insurance Company and UnumProvident Corporation)

24.    MACOVIAK hereby incorporates by reference all of the allegations set forth in the General Allegations and the First Cause of Acton as though fully set forth herein.

25.    UNUM breached their duties of good faith and fair dealing owed to MACOVIAK in the following respects:

A.    Unreasonable and bad faith failure to pay policy benefits to MACOVIAK at a time when UNUM knew that MACOVIAK was entitled to them under the terms of the Policy;

B.    Unreasonable and bad faith withholding of payments from MACOVIAK knowing MACOVIAK'S claim for benefits to be valid;

C.    Unreasonable and bad faith failure to pay MACOVIAK policy benefits under MACOVIAK'S claim when UNUM had insufficient information within its possession to justify such failure;

D.    Unreasonably and in bad faith misrepresenting to MACOVIAK pertinent facts and insurance policy provisions relating to the coverage in issue;

E.    Unreasonable and bad faith failure to reasonably investigate and process MACOVIAK'S claim for policy benefits;

LAW OFFICES OF
ROBERT K. SCOTT
A PROFESSIONAL CORPORATION
7700 IRVINE CENTER DRIVE, SUITE 605
IRVINE, CALIFORNIA 92618
TELEPHONE (949) 753-4950  FAX (949) 753-4949
EMAIL: mail@robertkscott.com  www.robertkscott.com

— 9 —

F.      Unreasonable and bad faith failure to attempt to effectuate a prompt, fair, and UNUM settlement of MACOVIAK'S claim for benefits when liability had become reasonably clear;

G.      Unreasonable and bad faith misrepresentation to MACOVIAK'S of the California law applicable to MACOVIAK'S claim; and

H.      Unreasonable and bad faith failure to adhere to California law in the basis for the denial of MACOVIAK'S claim for benefits.

26.      MACOVIAK is informed and believes and thereon alleges that UNUM have breached their duties of good faith and fair dealing owed to MACOVIAK by other acts or omissions of which MACOVIAK is presently unaware. MACOVIAK will seek leave of this Court to amend this Complaint at such time as she discovers the other acts or omissions of UNUM constituting further breach of her contract.

27.      As a proximate result of the aforementioned wrongful conduct of UNUM, MACOVIAK has suffered, and will continue to suffer in the future, damages under the Policy, plus interest, for a total amount to be shown at the time of trial.

28.      As a further proximate result of the aforementioned wrongful conduct of UNUM, MACOVIAK has suffered, and will continue to suffer, anxiety, worry, mental and emotional distress, and other incidental damages and out-of-pocket expenses, all to MACOVIAK'S general damages in a sum to be determined at the time of trial.

29.      As a further proximate result of the aforementioned wrongful business practices and conduct of UNUM, MACOVIAK was compelled to retain legal counsel to obtain the benefits due under the Policy.  Therefore, UNUM is liable to MACOVIAK for those attorney fees incurred by MACOVIAK in order to obtain the benefits under the Policy in a sum to be determined at the time of trial.

LAW OFFICES OF
ROBERT K. SCOTT
A PROFESSIONAL CORPORATION
7700 IRVINE CENTER DRIVE, SUITE 805
IRVINE, CALIFORNIA 92618
TELEPHONE (949) 753-4950  FAX (949) 753-4949
EMAIL: mail@robertkscott.com  www.robertkscott.com

30.    Defendant's business practices and conduct described herein were intended by UNUM to cause injury to MACOVIAK or were despicable conduct carried on by UNUM with a willful and conscious disregard of the rights of MACOVIAK, subjecting MACOVIAK to cruel and unjust hardship in conscious disregard of MACOVIAK'S rights, and were intentional misrepresentations, deceit or concealment of material facts known to UNUM with the intent to deprive MACOVIAK of property, legal rights, or to otherwise cause injury, such as to constitute malice, oppression, or fraud under California *Civil Code* §3294, thereby entitling MACOVIAK to punitive damages in an amount appropriate to punish or set an example of UNUM.

# PRAYER

WHEREFORE, Plaintiff, JOHN MACOVIAK, M.D. prays for judgment against UNUM as follows:

1.   Damages for failure to provide disability insurance benefits owed to MACOVIAK under the Policy, plus interest, including pre-judgment interest, in a sum to be determined at the time of trial;

2.   General damages for mental and emotional distress and other incidental damages in a sum to be determined at the time of trial;

3.   Punitive and exemplary damages in an amount appropriate to punish or set an example of Defendant, Provident Life and Accident Insurance Company and UnumProvident Corporation (Second Cause of Action);

4.   For pre-judgment interest at the appropriate legal rate;

5.   For costs of suit incurred herein;

6.   For attorney fees damages incurred to obtain the benefits under the Policy in a sum to be determined at the time of trial; and

///

LAW OFFICES OF
ROBERT K. SCOTT
A PROFESSIONAL CORPORATION
7700 IRVINE CENTER DRIVE, SUITE 605
IRVINE, CALIFORNIA 92618
TELEPHONE (949) 753-4950  FAX (949) 753-4949
EMAIL: mail@robertkscott.com  www.robertkscott.com

7.  For such other and further relief as the Court deems just and proper.

Dated: September 24, 2003

LAW OFFICES OF ROBERT K. SCOTT
deVRIES LAW FIRM


By _____
ROBERT K. SCOTT
JOEL S. POREMBA
DOUGLAS K. deVRIES
Attorneys for Plaintiff,
JOHN MACOVIAK, M.D.


## JURY DEMAND

Plaintiff, JOHN MACOVIAK, M.D., hereby demands a jury trial in this action.

Dated: September 24, 2003

LAW OFFICES OF ROBERT K. SCOTT
deVRIES LAW FIRM


By _____
ROBERT K. SCOTT
JOEL S. POREMBA
DOUGLAS K. deVRIES
Attorneys for Plaintiff,
JOHN MACOVIAK, M.D.

LAW OFFICES OF
ROBERT K. SCOTT
A PROFESSIONAL CORPORATION
7700 IRVINE CENTER DRIVE, SUITE 605
IRVINE, CALIFORNIA 92618
TELEPHONE (949) 753-4949 · FAX (949) 753-4950
EMAIL: mail@robertkscott.com   www.robertkscott.com

In this policy, the words "you" and "your" mean you, the Insured named below; "we," "our" and "us" mean Provident Life and Accident Insurance Company.

We will pay benefits for covered loss resulting from Injuries or Sickness subject to all of the provisions of this policy. Loss must begin while the policy is in force.

This policy is a legal contract between you and us. It is issued in consideration of the payment in advance of the required premium and of your statements and represent- ations in the application. A copy of your application is attached and made a part of the policy.

**NON-CANCELLABLE AND GUARANTEED CONTINUABLE AT GUARANTEED PREMIUMS TO YOUR 65TH BIRTHDAY OR FOR FIVE YEARS, WHICHEVER IS LATER:** You can continue this policy to your 65th birthday or for five years, whichever is later, by paying premiums on time. The premiums shown in the Policy Schedule on Page 3 are guaranteed to your 65th birthday or for five years, whichever is later.

**CONDITIONAL RIGHT TO RENEW AFTER YOUR 65TH BIRTHDAY OR FIVE YEARS, WHICHEVER IS LATER; PREMIUMS ARE NOT GUARANTEED:** You can renew this policy as long as you are actively and gainfully working full time; there is no age limit. You must pay premiums on time at our premium rates then in effect at time of renewals. (For further conditions, see the page titled "Premiums and Renewals." See Page 7 for the benefit provisions that will be included in the continued policy.)

### D I S A B I L I T Y   I N C O M E   P O L I C Y

#### JOHN A MACOVIAK MD, the Insured
#### Policy Number 06-337-5079055

#### SEE ADDITIONAL EXCLUSION(S) ON PAGE 3-A

**10 day right to examine your policy** – We want you to fully understand and be entirely satisfied with your policy. If you are not satisfied for any reason, you may return the policy to us, or to the agent through whom it was purchased, within 10 days of its receipt. We will refund any premiums you have paid within 10 days after we receive your notice of cancellation and the policy. It will be considered never to have been issued.

337

# POLICY SCHEDULE

Insured - JOHN A MACOVIAK MD
Effective Date - December 24, 1992
Issue Date - December 16, 1992

Policy Number - 06-337-5079055
First Renewal Date - March 24, 1993
Renewal Term - Three Months

```
Non-Smoker Gross Quarterly Policy Premium  ...............................  $400.82
Smoker Surcharge  ........................................................  $40.08
Policy Fee  ..............................................................  $4.25
Volume Discount  .........................................................  -$14.03

Net Quarterly Policy Premium  ............................................  $1,115.88
```

Other Premium Paying Methods  (Net Premiums):
   $5,072.14 Annually
   $2,586.79 Semi-Annually
    $431.13 Monthly (Preauthorized Bank Draft only)

---------------------------MONTHLY BENEFIT FOR TOTAL DISABILITY---------------------------

$8,000.00

---------------------------------ELIMINATION PERIOD---------------------------------

90 days of Total and/or Residual Disability

An Elimination Period starting after your 65th birthday
must consist entirely of days of Total Disability

---------------------MAXIMUM BENEFIT PERIODS FOR TOTAL DISABILITY---------------------

Injuries:
    Total Disability starting before your 65th birthday  ...............  for Life
    Total Disability starting on or after your 65th birthday
     but before your 75th birthday  ..................................  24 months
    Total Disability starting on or after your 75th birthday  ..........  12 months

(Policy Schedule is continued on next page.)

EXHIBIT A
Page 14

POLICY SCHEDULE (continued)

Sickness:
Total Disability starting before your 55th birthday ...............   for Life
Total Disability starting on or after your 55th birthday
  but before your 61st birthday ...................... to your 65th birthday
Total Disability starting on or after your 61st birthday
  but before your 62nd birthday ...................................   48 months
Total Disability starting on or after your 62nd birthday
  but before your 63rd birthday ...................................   42 months
Total Disability starting on or after your 63rd birthday
  but before your 64th birthday ...................................   36 months
Total Disability starting on or after your 64th birthday
  but before your 65th birthday ...................................   30 months
Total Disability starting on or after your 65th birthday
  but before your 75th birthday ...................................   24 months
Total Disability starting on or after your 75th birthday ...........   12 months

-----------------------------ADDITIONAL BENEFITS-----------------------------------
(The premium for each benefit is included in the Net Policy Premium shown above.)

Treatment of Injuries ....................................Page 8      Premium $2.10
  Maximum Amount                      $3,000.00

Residual Disability/Recovery ............................Page 9       Premium $72.70

Maximum Benefit Periods For Residual Disability
Injuries or Sickness:
Residual Disability starting before
  your 61st birthday ................................... To your 65th birthday
Residual Disability starting on or after your 61st birthday
  but before your 62nd birthday ......................................   48 months
Residual Disability starting on or after your 62nd birthday
  but before your 63rd birthday ......................................   42 months
Residual Disability starting on or after your 63rd birthday
  but before your 64th birthday ......................................   36 months
Residual Disability starting on or after your 64th birthday
  but before your 65th birthday ......................................   30 months

Guaranteed Physical Insurability/Long Term Disability ...Page 13     Premium $20.89
  Total Maximum Increase is $4,000.00 Monthly Benefit for Total Disability.  Premium
  for this option will reduce as stated on Page 13.  The option will continue until
  its expiration date described on Page 13.

(Policy Schedule is continued on next page.)

EXHIBIT A
Page 15

## POLICY SCHEDULE (continued)

### ADDITIONAL EXCLUSION(S)

In addition to the exclusions contained herein, this policy does not cover loss caused by:

ANY FORM OF MENTAL OR EMOTIONAL SICKNESS INCLUDING PSYCHOSIS AND/OR PSYCHONEUROSIS.

I understand that the above additional exclusion(s) is a part of the below numbered policy issued to me by Provident Life and Accident Insurance Company.

_____
Signature of Insured

Accident Department

## DEFINITIONS

Injuries means accidental bodily injuries occurring while your policy is in force.

Sickness means sickness or disease which is first manifested while your policy is in force.

Physician means any person other than you who is licensed by law, and is acting within the scope of the license, to treat Injuries or Sickness which results in covered loss.

Total Disability or totally disabled means that due to Injuries or Sickness:

1. you are not able to perform the substantial and material duties of your occupation; and

2. you are receiving care by a Physician which is appropriate for the condition causing the disability. We will waive this requirement when continued care would be of no benefit to you.

your occupation means the occupation (or occupations, if more than one) in which you are regularly engaged at the time you become disabled. If your occupation is limited to a recognized specialty within the scope of your degree or license, we will deem your specialty to be your occupation.

period of disability means a period of disability starting while this policy is in force. Successive periods will be deemed to be the same period unless the later period:

1. is due to a different or unrelated cause, or

2. starts more than twelve months after the end of the previous period (six months after the end of the previous period if benefits are expressed as a number of months - see Maximum Benefit Periods on Page 3);

in which event, the later period will be a new or separate period of disability. A new Elimination Period must then be met. And, a new Maximum Benefit Period will apply.

Elimination Period means the number of days of disability that must elapse in a period of disability before benefits become payable. The number of days is shown on Page 3. These days need not be consecutive; they can be accumulated during a period of disability to satisfy an Elimination Period. Benefits are not payable, nor do they accrue, during an Elimination Period.

if the Elimination Period is fulfilled during a period of disability, the first subsequent disability due to a different or unrelated cause will not require an Elimination Period, provided the first subsequent disability occurs within the twelve month period from the end of the prior disability, during which the Elimination Period was satisfied.

Case 3:08-cv-02027-BEN-JMA Document 11   Filed 09/26/03   Page 20 of 45

## EXCLUSIONS

We will not pay benefits for loss caused by:

1. war or any act of war, whether war is declared or not; or
2. normal pregnancy or childbirth, except we will pay benefits for loss caused by:
   a. complications of pregnancy; and
   b. normal pregnancy or childbirth on the later of the 91st day of disability or the day of disability following the Elimination Period.

   Complications are physical conditions physicians consider distinct from pregnancy even though caused or worsened by pregnancy. Examples of conditions that are not complications include false labor and morning sickness.

We will not pay benefits for loss we have excluded by name or specific description; any such exclusion will appear in the Policy Schedule.

## PRE-EXISTING CONDITION LIMITATION

We will not pay benefits for loss which is caused by a Pre-existing Condition. Pre-existing Condition means a physical impairment, deformity or a medical condition that was not disclosed, or that was misrepresented, in answer to a question in the application for this policy. A medical condition means a sickness or physical condition which either: 1) resulted in your receiving medical advice or treatment; or 2) caused symptoms for which an ordinarily prudent person would seek medical advice or treatment.

337-E-EP                    JOHN A MACOVIAK MD 06-337-5079055                    Page 5

EXHIBIT A
Page 18

## BENEFITS

**TOTAL DISABILITY**
We will pay the Monthly Benefit for Total Disability shown on Page 3 as follows:

1. Benefits start on the day of Total Disability following the Elimination Period.
2. Benefits will continue while you are totally disabled during the period of disability but not beyond the Maximum Benefit Period.

In no event will you be considered to have more than one disability at the same time. The fact that a disability is caused by more than one Injury or Sickness or from both will not matter. We will pay benefits for the disability which provides the greater benefit.

**PRESUMPTIVE TOTAL DISABILITY - LOSS OF SPEECH, HEARING, SIGHT OR THE USE OF TWO LIMBS**
You will be presumed totally disabled if Injuries or Sickness results in the entire and permanent loss of:

1. speech;
2. hearing in both ears;
3. the sight of both eyes; or
4. the use of both hands, or of both feet or of one hand and one foot.

You must present satisfactory proof of your loss. Your ability to work will not matter. Further medical care will not be required. Benefits will be paid according to the Total Disability provisions of this policy. But, benefits will start on the date of loss if earlier than the day benefits start as shown on Page 3. If loss occurs before your 65th birthday, the Monthly Benefit for Total Disability will be paid as long as you live regardless of the Maximum Benefit Period shown on Page 3.

**TRANSPLANT SURGERY**
You might be disabled from the transplant of part of your body to another person. If so, we will consider it to be the result of a Sickness.

**COSMETIC SURGERY**
You might be disabled from surgery to improve your appearance or to correct disfigurement. If so, we will consider it to be the result of a Sickness.

**WAIVER OF PREMIUM**
After you have been totally disabled for 90 days during a period of disability, we will:

1. refund any premiums which became due and were paid while you were totally disabled; and
2. waive the payment of each premium which thereafter becomes due for as long as the period of disability lasts. After it ends, to keep this policy in force, you must again pay any premiums which become due.

For premiums to be waived, you must give us satisfactory proof of disability.

EXHIBIT A
Page 19

**REHABILITATION**
Total Disability - Your participation in a program of occupational rehabilitation will not of itself be considered a recovery from Total Disability.

Expense - If, during a period of Total Disability, you notify us in writing that you want to participate in a program of occupational rehabilitation, we will consider paying for certain expenses you incur. The extent of our role will be determined by written agreement with you. Generally, we will pay for the reasonable cost of training and education which is not otherwise covered under health care insurance, workers' compensation or any public fund or program.

A program of occupational rehabilitation must be designed to help you return to work and be:

  1. a formal program of rehabilitation at an accredited graduate school, college or business school, or at a licensed vocational school;
  2. a recognized program operated by the federal or a state government; or
  3. any other professionally planned rehabilitation program of training or education.

**BENEFITS WHEN POLICY RENEWED AFTER YOUR 65TH BIRTHDAY OR FIVE YEARS, WHICHEVER IS LATER**
If this policy is continued in accordance with the "Conditional Right to Renew After Your 65th Birthday or Five Years, Whichever is Later" on Page 1, all of the benefit provisions on Pages 6 and 7 will be included in the continued policy. (If a Treatment of Injuries Benefit and/or a Preliminary Term Benefit is contained in this policy, it can be included in the continued policy. No other "Additional Benefits", if any, named on Page 3 will be included in the continued policy.) The Maximum Benefit Period starting while this policy is so continued is shown on Page 3. The Monthly Benefit for Total Disability will not change unless you choose to renew with a lesser amount.

**PAYMENT FOR PART OF MONTH**
If any payment under this policy is for part of a month, the daily rate will be 1/30th of the payment which would have been made if disability had continued for the whole month.

337-BZ                    JOHN A MACOVIAK MD 06-337-5079055                    Page 7

EXHIBIT A
Page 20

## TREATMENT OF INJURIES BENEFIT (PAYABLE IF DISABILITY BENEFITS NOT PAID)

If injuries require medical treatment prescribed by a Physician, we will pay your expenses for the treatment.  But, we will not pay more than the Maximum Amount for the Treatment of Injuries Benefit shown on Page 3 as a result of any one accident.

If you qualify for payment under this provision and also under a disability provision of this policy because of the same accident, payment will be made under the provision which provides the greater benefit.

337-NDI                        JOHN A MACOVIAK MD 06-337-5079055                     Page 8

EXHIBIT A
Page 21

RESIDUAL DISABILITY/RECOVERY BENEFITS with Cost of Living Indexing of Prior Monthly Income
(Nothing in this provision limits the policy definition of "Total Disability.")

### DEFINITIONS

Monthly Income means your monthly income from salary, wages, bonuses, commissions, fees or other payments for services which you render or your business provides. Normal and usual business expenses are to be deducted; income taxes are not. Monthly Income must be earned.  It does not include dividends, interest, rents, royalties, annuities, sick pay or benefits received for disability under a formal wage or salary continuation plan or other forms of unearned income.

Monthly Income can be credited to the period in which it is actually received or to the period in which it is earned.  We allow either the cash or accrual accounting method.  But, the same method must be used to determine the Prior Monthly Income and the Current Monthly Income during a period of disability.  If you elect the cash accounting method we will not include income received for services rendered prior to the start of the period of disability in your current monthly income.

Prior Monthly Income means the greatest of:

1.  your average Monthly Income for the 12 months just prior to the start of the period of disability for which claim is made;
2.  your average Monthly Income for the year with the highest earnings of the last two years prior to the start of such period of disability; or
3.  your highest average Monthly Income for any two successive years of the last five years prior to the start of such period of disability.

Current Monthly Income means your Monthly Income in your occupation for each month of Residual Disability being claimed.

Loss of Monthly Income means the difference between Prior Monthly Income and Current Monthly Income.  Loss of Monthly Income must be caused by the Residual Disability for which claim is made.  The amount of the loss must be at least 20% of Prior Monthly Income to be deemed Loss of Monthly Income.  If your loss is more than 75% of Prior Monthly Income, we will deem the loss to be 100%.

Residual Disability or residually disabled, during the Elimination Period, means that due to Injuries or Sickness:

1.  you are not able to do one or more of your substantial and material daily business duties or you are not able to do your usual daily business duties for as much time as it would normally take you to do them;
2.  you have a Loss of Monthly Income in your occupation of at least 20%; and
3.  you are receiving care by a Physician which is appropriate for the condition causing disability.  We will waive this requirement when continued care would be of no benefit to you.

After the Elimination Period has been satisfied, you are no longer required to have a loss of duties or time.  Residual Disability or residually disabled then means that as a result of the same Injuries or Sickness:

1.  you have a Loss of Monthly Income in your occupation of at least 20%; and
2.  you are receiving care by a Physician which is appropriate for the condition causing the Loss of Monthly Income.  We will waive this requirement when continued care would be of no benefit to you.

337-RS              JOHN A MACOVIAK MD 06-337-5079055                    Page 9

EXHIBIT A
Page 22

Monthly Benefit for Total Disability is shown on Page 3.  (It can be increased by certain other benefit provisions if they are included in your policy and are applicable.  If included, they are titled "Cost of Living Adjustments" and "Social Insurance Substitute Benefit.")

Residual Disability Monthly Benefit is the benefit payable under this provision.  It is determined monthly by this formula.  Each month, it equals:

$$\frac{\text{Loss of Monthly Income}}{\text{Prior Monthly Income}} \times \text{Monthly Benefit for Total Disability}$$

### RESIDUAL DISABILITY/RECOVERY BENEFITS

We will pay Residual Disability Monthly Benefits as follows:

1.  Benefits start on the day of Residual Disability following the Elimination Period or, if later, after the end of compensable Total Disability during the same period of disability.
2.  Benefits will continue while you are residually disabled during a period of disability but the combined period for which benefits for Total and Residual Disability are payable can not exceed the Maximum Benefit Period shown on Page 3.
3.  The first six monthly payments for Residual Disability will be the greater of:
    a.  50% of the Monthly Benefit for Total Disability; or
    b.  the Residual Disability Monthly Benefit determined for each month.

Residual Disability benefits will not be paid for any days for which Total Disability benefits are paid.

In no event will you be considered to have more than one disability at the same time.  The fact that a disability is caused by more than one Injury or Sickness or from both will not matter.  We will pay benefits for the disability which provides the greater benefit.

We can require any proof which we consider necessary to determine your Current Monthly Income and Prior Monthly Income.  Also, we or an independent accountant retained by us shall have the right to examine your financial records as often as we may reasonably require.

337-RS                      JOHN A MACOVIAK MD 06-337-5079055                     Page 10

EXHIBIT A
Page 23

## COST OF LIVING INDEXING OF PRIOR MONTHLY INCOME
### (Applicable to benefits paid after the 12th month of a period of disability)

### Definitions

**CPI-U** means the Consumer Price Index for All Urban Consumers. It is published by the United States Department of Labor. If the CPI-U is discontinued or if its method of computation is changed, we may use another nationally published index. We will choose an index which is similar in scope and purpose to the CPI-U. The CPI-U will then mean the index which is chosen.

**Review Date** means each anniversary date of the start of a period of disability.

**Review Period** means a one year period ending on a Review Date.

**Index Month** means the calendar month three months prior to a Review Date. But, the first Index Month means the calendar month three months prior to the start of a period of disability. We will measure all changes in the CPI-U from the first Index Month.

**Index Factor** is used by us to determine your adjusted Prior Monthly Income for each Review Period. We will compute this factor by dividing the CPI-U for the latest Index Month by the CPI-U for the first Index Month. We will compute it on each Review Date during a period of disability.

### Adjusted Prior Monthly Income

If Injuries or Sickness results in a period of disability that lasts at least 12 months, we will compute Cost of Living Adjustments on each Review Date for Residual Disability Benefits. Monthly benefits which thereafter accrue during that period of disability will be adjusted by indexing your Prior Monthly Income as follows:

1. On each Review Date, your Prior Monthly Income will be multiplied by your Index Factor. The result is your adjusted Prior Monthly Income. It will be used to figure your Loss of Monthly Income during the Review Period that follows. It will also be used in the formula to compute each Residual Disability Monthly Benefit payable during that Review Period.

   An increase in your Prior Monthly Income can cause your Loss of Monthly Income to be greater. This in turn can result in an increase in your Residual Disability Monthly Benefit. Other than your Index Factor (which is computed by using actual CPI-U values), there is no limit on the percent of increase in your Prior Monthly Income for a Review Period. If the CPI-U should go down, your adjusted Prior Monthly Income can decrease. But, it can never reduce below your Prior Monthly Income at the start of the period of disability.

EXHIBIT A
Page 24

2.  Indexing of your Prior Monthly Income will end on the earliest of:

    a.  the end of the period of disability (see Page 4);
    b.  the end of a benefit period; or
    c.  your 65th birthday.

If the computations end because of a or b above, disability benefits which can be paid for the first 12 months of a new period of disability will not include a Cost of Living Adjustment.  A new first Index Month and Review Date will apply to each new period of disability that lasts more than 12 months.

### WAIVER OF PREMIUM

For periods of disability which start before your 65th birthday, the Waiver of Premium provision on Page 6 is replaced by the following:

### "WAIVER OF PREMIUM - TOTAL DISABILITY AND RESIDUAL DISABILITY

If, during a period of disability, Injuries or Sickness results in more than 90 days of Total and/or Residual Disability, we will:

1.  refund any premiums which became due and were paid while you were so disabled; and
2.  waive the payment of each premium which thereafter becomes due for as long as the period of disability lasts.  After it ends, to keep your policy in force, you must again pay any premiums which become due.

For premiums to be waived, you must give us satisfactory proof of disability."

NOTE:  All portions of this Residual Disability/Recovery Benefit expire on your 65th birthday, and no further premiums for it will be due, even though the policy may be renewed after that date and benefits may continue to be payable past your 65th birthday, as shown on Page 3.

GUARANTEED PHYSICAL INSURABILITY/LONG TERM DISABILITY OPTION

## DEFINITIONS

Option Date means each anniversary of the Effective Date of the policy starting with the first and ending with the one which falls on or next follows your 55th birthday. If an Option Date does not coincide with a renewal date for this policy, it will change to coincide with the next renewal date thereafter.

Option Period means the period which begins 60 days before and ends 31 days after an Option Date.

Special Option Date means (a) the date you terminate your employment relationship with an employer which has a group long term disability insurance plan in force under which you are covered at the time of termination; or (b) the date the group long term disability insurance plan terminates. This Option may be exercised only once under the Special Option Date.

Special Option Period means the period which begins on the Special Option Date and ends 91 days thereafter.

## BENEFIT

On each Option Date, or once on the Special Option Date, you have the right to increase the Monthly Benefit for Total Disability shown on Page 3. You may do so, without submitting evidence of physical insurability, by following the rules set forth below.

Increases will be made only upon formal application by you and must be approved by us. You must apply within an Option Period or within the Special Option Period. The Effective Date of an increase will be shown on the Increased Benefit Amendment issued at the time of the increase.

The amount of an increase will be subject to each of the following:

1.  An increase, when combined with all other loss of time benefits then in force with us and other insurers, may not exceed the amount we would issue to you as a new applicant. This amount will be subject to our published issue and participation limits on the day you apply for an increase or on the Effective Date of the policy, whichever results in a higher amount.
2.  After your 46th birthday, an increase can not exceed one-third of the Maximum Increase shown on Page 3 (rounded up to the next $10.00).
3.  The sum of all increases can not exceed the Maximum Increase shown on Page 3.

If you do not qualify for an increase on an Option Date, you can still apply for an increase during a later Option Period or during the Special Option Period.

The first premium for an increase must be paid within 31 days; later premiums must be paid as part of the Policy Premium. If the premium for the policy is being waived (see Waiver of Premium provision) on the effective date of the increase, you will not have to start paying the premium for the increase until the premium for your policy becomes payable again.

337-GPI/LTD          JOHN A MACOVIAK MD 06-337-5079055          Page 13

EXHIBIT A
Page 26

The premium for each increase will be based on your attained age on the date of your application for each increase.  It will also be based on:

1.  our premium rates in effect at the time of the increase or on the Effective Date of the policy, whichever is less; and
2.  your occupational class at the time of the increase or on the Effective Date of the policy, whichever will produce the lower premium.

When an increase is exercised, the premium for this Option will be reduced.  The reduced premium will be based on the Maximum Increase remaining.

Increase During Disability:  During any Option Period, you can apply for an increase even though you are disabled.  (This provision is not available during the Special Option Period).  Your annual rate of earned income will be considered that which you had when the period of disability began.  An increase of up to 10% of the original Maximum Increase shown on Page 3 (rounded up to the next $10.00) approved by us during a period of disability will apply to the benefits payable while that period of disability continues.  This increased Monthly Benefit for Total Disability, plus any excess of 10% approved during the same period of disability will apply to new, separate periods of disability (see Page 4).

Note:  This Option will expire, and no further premiums for it will be due, on the earlier of:  (a) the date when the Maximum Increase has been exercised; or (b) the end of the Option Period for the 55th birthday Option Date.

EXHIBIT A
Page 27

## PREMIUMS AND RENEWALS

**POLICY TERM**
The first term of this policy starts on the Effective Date shown on Page 3. It ends on the First Renewal Date also shown. Later terms will be the periods for which you pay renewal premiums when due. All terms will begin and end at 12:01 A.M., Standard Time, at your home. The renewal premium for each term will be due on the day the preceding term ends, subject to the grace period.

**GRACE PERIOD**
This policy has a 31 day grace period. This means that if a renewal premium is not paid on or before the date it is due, it may be paid during the next 31 days. During the grace period, the policy will stay in force.

**CONDITIONAL RIGHT TO RENEW AFTER YOUR 65TH BIRTHDAY OR FIVE YEARS, WHICHEVER IS LATER; PREMIUMS ARE NOT GUARANTEED**
(Continued from Page 1)
You can renew this policy as long as you are actively and gainfully working full time. From time to time, we can require proof that you are actively and gainfully working full time. If you stop working, (except by reason of Total Disability), this policy will terminate; except that coverage will continue to the end of any period for which premium has been accepted.

Premiums must be paid on time. They will be based on our table of rates by attained age in effect at time of renewals for persons in your same rate class who are insured under policies of this form. Other than your attained age, the factors used to determine your rate class will be the same as those that applied to you on the Effective Date of this policy.

The benefit provisions which will be included in the continued policy are described on Page 7.

**REINSTATEMENT**
If a renewal premium is not paid before the grace period ends, the policy will lapse. Later acceptance of the premium by us or by our agent authorized to accept payment without requiring an application for reinstatement will reinstate this policy.

If we or our agent require an application, you will be given a conditional receipt for the premium tendered. If the application is approved, the policy will be reinstated as of the approval date. Lacking such approval, the policy will be reinstated on the 45th day after the date of the conditional receipt unless we have previously written you of our disapproval.

The reinstated policy will cover only loss that results from Injuries which occur after the date of reinstatement or Sickness which is first manifested more than 10 days after such date. In all other respects, your rights and ours will remain the same, subject to any provisions noted on or attached to the reinstated policy.

EXHIBIT A
Page 28

## SUSPENSION DURING MILITARY SERVICE

If you enter full-time active duty in the military (land, sea or air) service of any nation or international authority, you may suspend your policy.  But, you may not suspend the policy during active duty for training lasting 3 months or less.  The policy will not be in force while it is suspended, and you will not be required to pay premiums.  Upon receipt of your written request to suspend the policy, we will refund the pro-rata portion of any premium paid for a period beyond the date we receive your request.

If your full-time active duty in military service ends before your 65th birthday, you may place this policy back in force without evidence of insurability.  Your coverage will start again when:

1.  we have received your written request to place the policy back in force; and
2.  you have paid the required pro-rata premium for coverage until the next premium due date.

However, your request and premium payment must be received by us within 90 days after the date your active duty in the military service ends. Premiums will be at the same rate that they would have been had your policy remained in force.  The policy will not cover any loss due to Injuries which occur or Sickness which is first manifested while the policy is suspended.  In all other respects you and we will have the same rights under the policy as before it was suspended.

## PREMIUM ADJUSTMENT AT DEATH

Any premium paid for a period beyond the date of your death will be refunded to your estate.

### CLAIMS

## NOTICE OF CLAIM

Written notice of claim must be given within 20 days after a covered loss starts or as soon as reasonably possible.  The notice can be given to us at our home office, Chattanooga, Tennessee, or to our agent.  Notice should include your name and the policy number.

## CLAIM FORMS

When we receive your notice of claim, we will send you claim forms for filing proof of loss.  If these forms are not given to you within 15 days, you will meet the proof of loss requirements by giving us a written statement of the nature and extent of your loss.  You must give us this proof within the time set forth in the Proof of Loss section.

## PROOF OF LOSS

If the policy provides for periodic payment for a continuing loss, you must give us written proof of loss within 90 days after the end of each period for which we are liable.  For any other loss, written proof must be given within 90 days after such loss.

If it was not reasonably possible for you to give written proof in the time required, we will not reduce or deny the claim for this reason if the proof is filed as soon as reasonably possible.  In any event, the proof required must be furnished no later than one year after the 90 days unless you are legally unable to do so.

337-C                     JOHN A MACOVIAK MD 06-337-5079055                 Page 16

EXHIBIT A
Page 29

**TIME OF PAYMENT OF CLAIMS**
After we receive written proof of loss, we will pay monthly all benefits then due you for disability.   Benefits for any other loss covered by this policy will be paid as soon as we receive proper written proof.

**PAYMENT OF CLAIMS**
Benefits will be paid to you.   Any benefits unpaid at death will be paid to your estate.

If benefits are payable to your estate, we can pay benefits up to $1000 to someone related to you by blood or marriage whom we consider to be entitled to the benefits. We will be discharged to the extent of any such payment made in good faith.

**PHYSICAL EXAMINATIONS**
We, at our expense, have the right to have you examined as often as is reasonable while a claim is pending.

**MISSTATEMENT OF AGE**
If your age has been misstated, the benefits will be those the premium paid would have bought at the correct age.

**LEGAL ACTIONS**
You may not start a legal action to recover on this policy within 60 days after you give us required proof of loss.   You may not start such action after three years from the time proof of loss is required.

<strong>GENERAL PROVISIONS</strong>

**ENTIRE CONTRACT**
This policy with the application and attached papers is the entire contract between you and us.   No change in this policy will be effective until approved by one of our officers.   This approval must be noted on or attached to this policy.   No agent may change this policy or waive any of its provisions.

**TIME LIMIT ON CERTAIN DEFENSES**

1.  After two years from the Effective Date of this policy no misstatements, except fraudulent misstatements, made by you in the application for this policy will be used to void the policy or to deny a claim for loss incurred or disability that starts after the end of such two year period.

2.  No claim for loss incurred or disability that starts after two years from the Effective Date of this policy will be reduced or denied on the ground that a sickness or physical condition not excluded by name or specific description had existed before the Effective Date of this policy.

**CONFORMITY WITH STATE STATUTES**
Any provision of this policy which, on its effective date, is in conflict with the laws of the state in which you reside on that date is changed to conform to the minimum requirements of those laws.

**ASSIGNMENT**
No assignment of interest in this policy will be binding on us until a copy is on file with us.   We are not responsible for the validity of any assignment.

337-GP-CA(2)                    JOHN A MACOVIAK MD 06-337-5079055                    Page 17

EXHIBIT A
Page 30

How well and how long have you known the Proposed Insured? _John_

Soliciting Agent _Robert Carrick_

Taxpayer I.D. Number _176. 24. 1966_

## PROPOSED INSURED'S ADDRESSES AND SOCIAL SECURITY NO.

(a) Residence Address? _38301 Nasturn Lay. Palm Desert CA 92265_
   (Print)  [Street and No. (or P.O. Box No.)]  City.  State.  Zip Code

(b) Business Address? _39-600 Bob Hope Dr. Ranch mirage CA 92270_

(c) Social Security No. _177. 42. 6565_

Send Notices:
☑ Residence
☐ Business

_164 5079055_

N⁰ 118441

I hereby apply to Provident Life and Accident Insurance Company for insurance based on the following representations:

1. (a) Full name? (Print) _John A. Macoviak_   (b) Sex? M ☒ F ☐

(c) Height? ft. _5_ in. _10_ (d) Weight? lbs. _155_ (e) Date of Birth? _7-24-5_ (f) Birthplace? _Pennsylvania_

2. (a) Occupation: _Cardiovascular Thoracic Surgeon, Director of Transplantatio_
(c) Employer: _Heart Institute of the Desert_ (b) Exact duties: _Heart Surgery._
(d) Are you actively at work fulltime in the above occupation? Yes ☒ No ☐ (e) Length of Employment: _____

| 3. (a) Annual Earned Income From Your Occupation for Federal Tax Purposes (After Business Expenses, if any): | Year to Date | Actual Prior Calendar Year | Actual Year Prior to Last Calendar Year |
|---|---|---|---|
| Salary | $ _405,000_ | $ _450,000_ | $ _450,000_ |
| Other (Describe) _P-Alvin Cent_ | $ _25,000_ | $ _30,000_ | $ _30,000_ |
| (b) Unearned Income Prior 2 Years (Interest, Dividends, etc.) | $ _480,000_ | $ _480,000_ | |

4. (a) Do you have or are you applying for other: (1) Individual, (2) Association, (3) Group, or (4) Employer Sick Pay disability income coverage; or (5) Overhead Expense disability coverage? Yes ☑ No ☐ (If "Yes" give details below)

| Company or Source | Type (1, 2, 3, 4 or 5) | Monthly Disability Amount | Benefit Period Accident | Benefit Period Sickness |
|---|---|---|---|---|
| _Conn mut-l_ | _3_ | _6/000_ | _1 yr_ | _5 mi._ |
| | | | | |

(b) Do you have Social Security substitute coverage? Yes ☐ No ☑ Amount $_____ Company _____
(c) Is any coverage to be replaced by the coverage applied for? Yes ☐ No ☑ If "Yes", complete Form 1336-Q4.
(d) Does your net worth exceed $4,000,000? Yes ☐ No ☑ If "Yes" complete Form 1336-NW.
(e) Have you smoked cigarettes within the last 12 months? Yes ☑ No ☐

| | | Yes | No |
|---|---|---|---|
| 5. Have you ever been medically diagnosed as having or been treated for: | | | |
| (a) High blood pressure, diabetes, cancer, arthritis, asthma, emphysema, or emotional, nervous or mental disorder, or disease or disorder of the eyes, ears or speech? | | ☐ | ☑ |
| (b) Disease or disorder of the neck, back, spine, extremities, heart, lungs, breasts, or the circulatory, digestive, urinary or reproductive systems? | | ☐ | ☑ |
| 6. Have you ever been diagnosed by a member of the medical profession as having Acquired Immune Deficiency Syndrome (AIDS), Aids Related Complex (ARC) or any sexually transmitted disease? | | ☐ | ☑ |
| 7. Have you ever used barbiturates, narcotics, excitants or hallucinogens, or ever sought help or treatment for their use or alcohol use? | | ☐ | ☑ |
| 8. Other than above, have you, within the past 5 years, had counseling, medical or surgical advice or treatment, had a physical examination, or been under observation for any disease or disorder? | | ☑ | ☐ |
| 9. Have you ever made application for Disability, Health or Life Insurance which has been declined, modified or rated? (If "Yes", give names of organization, kinds of insurance, dates and reasons.) | | ☐ | ☑ |
| 10. Do you have a physical impairment or deformity, or take any type of prescribed medication? | | ☐ | ☑ |

(Give details of "Yes" answers to Q5-10. Include diagnoses, dates, physicians and addresses)
_9/29/92 Physical exam by cardiologist Jeff in in polar (2.5 million_
_Transamerica L/P Policy issued PA-Inst Staff_
_(924 17389)_

11. Has your license to practice your occupation ever been suspended or revoked or have disciplinary measures ever been levied against you? Yes ☐ No ☑

12. (a) Will your employer pay for all disability coverage to be carried by you with no portion of the premium to be included in your taxable income? Yes ☐ No ☑ (b) How much premium is paid with this application? _All._

To the best of my knowledge and belief, all of the foregoing statements and all of those in Part II, if any, of this Application are true, complete, and correctly stated. They are offered to Provident Life and Accident Insurance Company as the basis for any insurance issued on this Application. I have received a disclosure concerning: (1) the Medical Information Bureau; and (2) an investigative consumer report which may be made for use with this Application. I also acknowledge receipt of an outline of the coverage for which I have applied.

I authorize any licensed physician, medical practitioner, hospital, clinic or other medical or medically related facility, insurance company, the Medical Information Bureau or other organizations, institution or person that has any records or knowledge of me or my health, to give to Provident Life and Accident Insurance Company and/or its reinsurers any such information.

I authorize all said sources, except the Medical Information Bureau, to give such records or knowledge to Equifax, Inc. This agency is employed by Provident Life and Accident Insurance Company to collect and send such information.

A copy of this authorization shall be as valid as the original.

Signed at _Palm Desert CA_

this _10_ day of _Oct_ 19 _92_

Field Office: _____

Form 1336-CA-FL _04205 -005 -IEC_

Signature of Proposed Insured X _J A Macoviak_

I certify that I have truly and accurately recorded on this application the information supplied by the Proposed Insured.

_(Licensed Agent's or Broker's Signature)_

EXHIBIT A
Page 31



# ROBERT GROVICH, C.L.U.

*Personal & Corporate Insurance*



*(714) 553-1777*
*Fax (714) 756-1954*



PERSONAL & CONFIDENTIAL

January 21, 1994

Dr. John A. Macoviak
Heart Institute of the Desert
39-600 Bob Hope Drive
Rancho Mirage, CA  92270

Dear John:

You will find attached the Increased Benefit Amendment for your Provident disability policy, increasing benefits to the maximum amount of $12,000.00 per month.   The effective date is 1/24/94 and Provident will begin increasing your deductions at that time.

If you have any questions, please let me know.

Sincerely,


Bob

BG/lg

Enclosures


*18201 Von Karman  •  Suite 900  •  Irvine. California 92715*

**INCREASED BENEFIT AMENDMENT**

Insured - JOHN A MACOVIAK MD
Effective Date of Amendment - January 24, 1994

Policy Number - 06-337-0005079055
Premium Term - Twelve Months

Non-Smoker Gross Monthly Policy Premium ................................................................................................ $512.50
Smoker Surcharge .................................................................................................................................... $51.25
Policy Fee ................................................................................................................................................... $3.75
Volume Discount ...................................................................................................................................... -$21.38

Net Monthly Policy Premium ..................................................................................................................... $546.11

This amendment is a part of your policy. The effective date is shown above. It is subject to all provisions of the policy except as they are changed below.

Your policy includes an option titled "Guaranteed Physical Insurability Option." This increase in benefits is based on it. A copy of your application for an increase is attached. It is a part of this amendment. In consideration of the statements in your application and the timely payment of the increased policy premium, your benefits are changed as follows:

The Monthly Benefit for Total Disability is increased to $12,000.00

The Total Maximum Increase under the Guaranteed Physical Insurability Option is reduced to $.00 Monthly Benefit for Total Disability.

$400 of the increase in the Monthly Benefit for Total Disability will apply to a period of disability existing on the effective date shown above. The full amount of the increase will apply to new periods of disability starting thereafter. (See Page 4 of the policy.)

**TIME LIMIT ON CERTAIN DEFENSES**

After this amendment has been in force for two years during your lifetime excluding any time you are disabled, no misstatements, except fraudulent misstatements, made by you in the application for this amendment will be used to void the amendment or to deny a claim for loss incurred or disability that starts after the end of such two year period.

**PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY**

**Vice President**

337-IBA(10)-CA-FL

EXHIBIT A
Page 33

# PROVIDENT
# LIFE AND ACCIDENT
### INSURANCE COMPANY

1 FOUNTAIN SQUARE
CHATTANOOGA, TN 37402

**APPLICATION FOR ADDITIONAL COVERAGE UNDER MY POLICY NO.** _05079055_

---

**1** Full Name
of Insured: _Dr. John A. Macoviak_      Date of Birth _11-17-60_
(Please Print)

**2** (a) Residence
Address: _427 Desert Lakes Dr. Palm Spring CA_   _92264_
(Please Print)          Street        City        State       Zip Code

(b) Business
Address: _39-600 Bob Hope Dr.₄ Ranch. Mirage CA 92270_

**3** (a) Occupation _Cardiovascular Thorasic Surgeon - Director of Transplantation_

(b) Exact duties _Heart Surgery_

(c) Employer _Heart Inst. Fdt. of The Desert_

(d) Nature of Business _Heart care & surgery_

(e) Are you actively at work full-time in the above occupation?    Yes ☑   No ☐

**4** What is your current annual rate of earned income (net after business expenses)? $ _490,000_

**5** (a) Do you have, or are you applying for other:
(1) Individual, Association or Group disability income coverage?    Yes ☑   No ☐
(2) Formal employer sick pay or Union disability income coverage not included in (1)?   Yes ☐   No ☑
(3) Business Overhead Expense disability coverage?   Yes ☐   No ☑

(Give details below of all disability coverage in force and applied for. Type should be shown as: I — Individual, A —
Association, G — Group, E — Employer Sick Pay or Union, and BOE — Business Overhead Expense).

| MONTHLY DISABILITY COVERAGE | | | |
|---|---|---|---|
| Company or Source | Type (I, A, G, E, or BOE) | Monthly Disability Amount | Benefit Period Accident Sickness |
| Provident Life & Accident policy Abc | I | 8000 | L - 255 |
| | | | |
| | | | |
| | | | |

(b) Does any of the above coverage include a Social Security supplement or substitute benefit?   Yes ☐   No ☑
If "Yes," give the company and amount of such benefit: _____

(c) Are you covered by Social Security?   Yes ☑   No ☐

(d) Is any of the above disability coverage to be replaced by any SIS Benefit being applied for?   Yes ☐   No ☑
(If "Yes," describe coverage.) _____

(e) Will your employer pay for all Accident and Sickness disability coverage to be carried by you with no portion of the
premium to be included in your taxable income?   Yes ☐   No ☑

(Continued on next page)

1807-ADD

EXHIBIT A
Page 34

**6** Have you consulted a physician for any reason within the last five years?      Yes ☐     No ☐     If "Yes," list diagnoses, dates, durations and names and addresses of all attending physicians and hospitals. _____

_____

_____

_____

_____

_____

**7** Do you have a physical impairment or deformity?     Yes ☐     No ☐     If "Yes," give details.

_____

**8** Do you understand and agree that the addition of a Residual Disability Benefit Rider shall make void any Partial Disability Benefits or any Residual Disability Benefits which may now be included in your policy?     Yes ☐     No ☐

**9** Do you understand and agree that the addition of a Cost of Living Adjustment Rider shall make void any Cost of Living Adjustment Benefits which may now be included in your policy?     Yes ☐     No ☐

**10** Do you understand that the issuance of the requested additional coverage will be based upon the answers above, and that a copy of this application will become a part of any rider issued?     Yes ☐     No ☐

To the best of my knowledge and belief, the foregoing answers are true and complete. I understand that the coverage now being applied for shall not be in force unless a rider providing the coverage requested is issued and, if issued, that such coverage will be in force as of the effective date shown on the rider in accordance with its terms. I have received a disclosure concerning: (1) the Medical Information Bureau; and (2) an investigative consumer report which may be made for use with this Application.

I authorize any licensed physician, medical practitioner, hospital, clinic or other medical or medically related facility, insurance company, the Medical Information Bureau or other organization, institution or person that has any records or knowledge of me or my health, to give to Provident Life and Accident Insurance Company any such information.

I authorize all said sources, except the Medical Information Bureau, to give such records or knowledge to Equifax, Inc. This agency is employed by Provident Life and Accident Insurance Company to collect and send such information.

A copy of this authorization shall be as valid as the original.

Signed at _Palm Spn. mg, Cn_ _____

This _15_ day of _Novmbn_ 19 _87_     Signature of Applicant _____

Branch Office or Agency:

I certify that I have truly and accurately recorded on this application the information supplied by the applicant.

_____ (Licensed Agent's or Broker's Signature)

1807-ADD

EXHIBIT A
Page 35

## CHANGE IN COVERAGE

Insured: John A Macoviak MD

Policy Number: 06-5079055

Effective Date: 12-24-94

It is mutually understood and agreed that the coverage provided by the above policy number is changed as follows:

The special exclusion, which appears in the schedule page of the policy, for any form of mental or emotional sickness including psychosis and/or psychoneurosis is null, void and of no effect.

Except as may be modified by the above, the policy remains subject to all conditions, agreements and limitations thereof. This form is attached to and becomes a part of the above policy.

Countersigned by

_____
Duly Licensed Resident Agent

_____
Vice President

A-30173 (Rev 7-88)       Provident Life and Accident Insurance Company

AUDE

EXHIBIT A
Page 36

August 29, 2003


John Macoviak, MD
5412 Thunderbird Lane
La Jolla CA 92037


Re: Claim ID# 52-05079055-001

Dear Dr. Macoviak:

We are writing to you concerning your Individual Disability claim with our Company
and would like to update you on the status.

According to the terms of your policy, *Total Disability or totally disabled means that due
to Injuries or Sickness:*

  1. *you are not able to perform the substantial and material duties of your
     occupation; and*
  2. *you are receiving care by a Physician which is appropriate for the condition
     causing the disability. We will waive this requirement when continued care
     would be of no benefit to you.*

*Residual Disability or residually disabled, during the Elimination Period, means that due
to Injuries or Sickness:*

  1. *you are not able to do one or more of your substantial and material daily business
     duties or you are not able to do your usual daily business duties for as much time
     as it would normally take you to do them;*
  2. *you have a Loss of Monthly Income in your occupation of at least 20%; and*
  3. *you are receiving care by a Physician which is appropriate for the condition
     causing disability. We will waive this requirement when continued care would be
     of no benefit to you.*

*After the Elimination Period has been satisfied, you are no longer required to have a loss
of duties or time. Residual Disability or residually disabled then means that as a result
of the same Injuries or Sickness:*

  1. *you have a Loss of Monthly Income in your occupation of at least 20%; and*

EXHIBIT B
Page 37

lithium. I am taking psychotherapy regularly. These are all efforts to return me to my occupation. To date my level of function has been less than ideal for assuming responsibilities for people's lives during very high risk surgeries and peri-operative care.

Tremor, sedation from medications at night when emergencies require night driving and complex surgery, urgency of bowels all lead to a dangerous situation for me the surgeon and the patient. Nonetheless if all this psychotherapy and medication is not an effort to get back to work there needs to be a new definition of just what that is.

All that being said, I am working to improve my mental and physical health to enable me to ultimately return to work as a cardiac surgeon. When I will be ready and if the stigma of my Bipolar II Disorder will ever allow me to "test" my capability of returning to that profession is an unknown at this point.

To address the side effects to your medications, we did review your records with respect to your tremor. The records did not include any physician examination provided by your practioners in terms of the presence or qualities of the reported tremor. There was not a referral to a movement disorder specialist for evaluation either.

You and your attending physician have assumed that the tremor is due to the medication Depakote which is known to have a secondary side effect of a tremor which is dose related. It would be expected that there would be blood work to monitor the medication level, however, this information was not included. If the tremor is associated with the medication, it would most often be treated by discontinuing the medication and substituting an alternative. However, it does not appear this has been attempted. Though it would not be a first choice treatment option, there is the possibility of adding a second agent to counteract the tremor if it was determined medications could not be changed. This would require a referral to a neurologist to explore pharmacological treatment options.

Based on the information received to date the severity of your tremor and any associated effects on dexterity are not demonstrated in the records. It does appear that you have used Depakote intermittently since 1999 while you were practicing as a surgeon. Although your records note a tremor, there are few observations of it and no evidence on which to base restrictions and limitations associated with it.

You note a medication related side effect to be urgency of bowels. However, you stated during the Independent Medical Examination with Dr. Heidel that you also take Metamucil and admit to wanting to have loose bowels to prevent having painful bowel movements because of an anal fissure.

The issue of your motivation to return to cardiothoracic surgery has been mentioned. In Dr. River's examination, you were asked what would have to change for you to get back to work. You responded "nothing" and did not provide any specifics regarding what would need to change to facilitate you going back to work.

EXHIBIT B
Page 38

2.  *you are receiving care by a Physician which is appropriate for the condition causing the Loss of Monthly Income.  We will waive this requirement when continued care would be of no benefit to you.*

As you know, you attended two Independent Medical Examinations with Dr. Lynette Rivers, clinical psychologist, and Dr. Mathew Carroll, psychiatrist, in December 2002 and January 2003.  Dr Carroll's report noted that while you probably suffered from major depressive episodes in the past, at present you were not experiencing a major depressive episode.  He was also of the opinion that your psychiatric symptoms have not limited your technical proficiency to perform cardiothoracic surgery.  You also indicated to Dr. Carroll that the side effects from your medications would preclude you from returning to work.  However, Dr. Carroll notes that there are alternate medications and that these medications have not been considered.

Dr. Rivers' report notes that you self reported previous bouts of depression that were not disabling.  He also stated that there were several reasons that return to work would be difficult.  However many were not related to any psychiatric condition.  These Independent Medical Examinations along with the contents of your claim file, did not provide support for the presence of an impairment which would prevent you from returning to work.

Following the above examinations, in order to be of further service to you, we asked that you attend an additional Independent Medical Examination to help clarify.  The Examination performed by Dr. Steven Heidel, psychiatrist, notes that you do manifest the Bipolar II disorder and that you have experienced two episodes of hypomania in the past.  However, you have not experienced a hypomanic episode since the initiation of your claim.  It notes that presently you are manifesting mild depressive symptoms which are not impairing in their severity.  Currently, it appears that there is no impairment associated with the Bipolar II disorder which would limit you from performing the duties of your occupation.  Dr. Heidel's opinion regarding your level of functioning is consistent with the opinions of Dr Carroll and Dr. Rivers.  While Dr. Heidel opines that you manifest bipolar, he emphasizes that you are not prevented from returning to work as a cardiothoracic surgeon due to this diagnosis.  A copy of Dr. Heidel's report has been sent to Dr. Flanagan for his review and comment.

We received a response letter from Dr. Flanagan dated April 16, 2003 which was reviewed by our in house physician.  The letter provided additional evidence of preserved functioning.  Dr. Flanagan does not opine that you cannot return to work as a cardiothoracic surgeon, but only that it is "difficult to assess" whether you can return because you have not had a chance to work since your dismissal.  He does report non-medical factors which would make it difficult for you to return to work, most notably the lack of availability of jobs which correspond to the preferences of you and your spouse.

You obtained a copy of the Independent Medical Examination reports from your Dr. Flanagan and provided a response to the reports dated March 6, 2003.  You responded to the statement that "he has not made an effort to return to this occupation."  You note:

"this is fallacious in that my medications have been changed to optimize effect and diminish side effects.  That takes time.  I am only now beginning to feel improved with

Dr Flanagan did respond to the issue of motivation in his April 16, 2003 letter. He disagreed that you have little motivation to return to cardiothoracic surgery. He notes "I suspect that if there is an equivalent position available somewhere that his wife can accept, and it provides the same advantages of his recent position, he would be happy to try again." He also noted that you had considered returning to surgery but "knows of no surgical department that would accept him or a location that his wife or he could accept." Dr. Flanagan had also previously indicated possible dates for your return to work on the Attending Physician's Statements. On the October 23, 2002 form, he notes February 1, 2003 as the date he expects you to return to work in own occupation. He also notes your restrictions and limitations to be "no patient care for several months." More recent forms have also noted a return to work date. On March 4, 2003 it notes approximately August 2003 for your own occupation and July 2003 for any occupation. The June 6, 2003 form notes October 2003 for own occupation and September 2003 for any occupation.

Later, however, in your letter of May 28, 2003 you note that your disability policy "covers my disability as a heart surgeon to perform heart surgery. I understand that I am entitled to pursue any other career for which I am not disabled. As a result, I am consulting in the business world as I have an MBA as well." We wish to remind you that based on our review of your claim file, it appears that you are not precluded from returning to your occupation as a cardiothoracic surgeon if you chose to do so.

With regard to the side effects precluding return to work, there are medications which can be adjusted or changed to minimize or eliminate side effects. Also, if you enter psychotherapy to address anger and associated interpersonal difficulties, it is possible that you may not even require mood stabilizing medications. It does not appear that there have been attempts to change your medications or referrals to other physicians to address your tremor. It would follow that if you were motivated to return to work in cardiothoracic surgery, you would avail yourself of alternative treatments to help achieve this goal.

Also, you have brought up the issue of the difficulty in obtaining a new job. You have indicated that your previous employer would most likely not provide a reference for you. It has been noted that you were dismissed from UCSD due to interpersonal conflict rather than poor surgical abilities. It appears that there are non- medical factors affecting your decision to return to work in your occupation. We wish to remind you that this policy does insure your occupation not your specific job. Therefore, it would be the ability to perform your job not the availability of your job that is insured.

Currently the information received to date does not support an impairment which would preclude you from performing the duties of a cardiothoracic surgeon. We do appreciate that you have been away from surgery; therefore we have enclosed information concerning simulation centers and Education Training Seminars. This would provide an opportunity for you to gain confidence in your surgical abilities again.

We have also forwarded under separate cover $36,000 to be of financial assistance to you while you transition back into full time employment in your occupation. You are not

eligible for further benefits as defined under the Total or Residual Disability provisions of your contract.

If you have additional information to support your request for disability benefits, please send it to my attention for further review at the address noted on this letterhead.

However, if you disagree with our determination and intend to appeal this claim decision, you must submit a written appeal. This appeal must be received by us within 180 days of the date of this letter. Your written appeal should include your comments and views of the issues, as well as any new documentation you wish us to consider. You should submit your written appeal to the following address:

Worcester Customer Care Center
Quality Performance Support - Appeals Unit
P.O. Box 15112
Worcester MA 01615

If we do not receive your written appeal within 180 days of the date of this letter, our claim decision will be final.

## TO ALL CALIFORNIA RESIDENTS AND POLICYHOLDERS

You may also contact the California Insurance Department if you wish to have them review your claim. If you wish to write to the Insurance Department, your letter should be addressed to:

California Department of Insurance
Claims Service Bureau, 11th Floor
300 South Spring Street
Los Angeles, CA 90013

If you wish to contact the Department by telephone, you should ask for the Consumer Communications Bureau at 1-800-927- HELP (1-800-028-4357) or (213)897-8921.

If you should have any questions or concerns, please feel free to contact us at (888) 226-7959, extension 76765.

Sincerely,


Danielle Molineaux ACS, ALHC
Senior Customer Care Specialist
Customer Care Center
Provident Life and Accident Insurance Company

JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

JOHN MACOVIAK, M.D., an individual

**DEFENDANTS**

PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY; UNUMPROVIDENT CORPORATION

(b) County of Residence of First Listed Plaintiff **San Diego**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Robert K. Scott, Esq., Bar No. 67466, LAW OFFICES OF ROBERT K. SCOTT, 7700 Irvine Center Drive, Suite 605, Irvine, CA  92618; telephone:  (949) 753-4950

Attorneys (If Known)

'03 CV   1927 BTM LAB

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question (U.S. Government Not a Party)
- [X] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for (For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [X] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal of Business In Another State | [ ] 5 | [X] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [X] 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reapportionment |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 362 Personal Injury— | [ ] 620 Other Food & Drug | | [ ] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product | Med. Malpractice | [ ] 625 Drug Related Seizure | [ ] 423 Withdrawal | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | Liability | [ ] 365 Personal Injury— | of Property 21 USC 881 | 28 USC 157 | [ ] 450 Commerce/ICC Rates/etc. |
| [ ] 150 Recovery of Overpayment | [ ] 320 Assault, Libel & | Product Liability | [ ] 630 Liquor Laws | | [ ] 460 Deportation |
| & Enforcement of Judgment | Slander | [ ] 368 Asbestos Personal | [ ] 640 R.R. & Truck | PROPERTY RIGHTS | [ ] 470 Racketeer Influenced and |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers' | Injury Product | [ ] 650 Airline Regs. | [ ] 820 Copyrights | Corrupt Organizations |
| [ ] 152 Recovery of Defaulted | Liability | Liability | [ ] 660 Occupational | [ ] 830 Patent | [ ] 810 Selective Service |
| Student Loans | [ ] 340 Marine | PERSONAL PROPERTY | Safety/Health | [ ] 840 Trademark | [ ] 850 Securities/Commodities/ |
| (Excl. Veterans) | [ ] 345 Marine Product | [ ] 370 Other Fraud | [ ] 690 Other | | Exchange |
| [ ] 153 Recovery of Overpayment | Liability | [ ] 371 Truth in Lending | | SOCIAL SECURITY | [ ] 875 Customer Challenge |
| of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 380 Other Personal | LABOR | [ ] 861 HIA (1395ff) | 12 USC 3410 |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle | Property Damage | [ ] 710 Fair Labor Standards | [ ] 862 Black Lung (923) | [ ] 891 Agricultural Acts |
| [ ] 190 Other Contract | Product Liability | [ ] 385 Property Damage | Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 892 Economic Stabilization Act |
| [ ] 195 Contract Product Liability | [ ] 360 Other Personal Injury | Product Liability | [ ] 720 Labor/Mgmt. Relations | [ ] 864 SSID Title XVI | [ ] 893 Environmental Matters |
| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | [ ] 730 Labor/Mgmt.Reporting | [ ] 865 RSI (405(g)) | [ ] 894 Energy Allocation Act |
| [ ] 210 Land Condemnation | [ ] 441 Voting | [ ] 510 Motions to Vacate | & Disclosure Act | FEDERAL TAX SUITS | [ ] 895 Freedom of Information Act |
| [ ] 220 Foreclosure | [ ] 442 Employment | Sentence | [ ] 740 Railway Labor Act | [ ] 870 Taxes (U.S. Plaintiff | [ ] 900 Appeal of Fee |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/ | Habeas Corpus: | [ ] 790 Other Labor Litigation | or Defendant) | Determination |
| [ ] 240 Torts to Land | Accommodations | [ ] 530 General | [ ] 791 Empl. Ret. Inc. | [ ] 871 IRS—Third Party | Under Equal Access to |
| [ ] 245 Tort Product Liability | [ ] 444 Welfare | [ ] 535 Death Penalty | Security Act | 26 USC 7609 | Justice |
| [ ] 290 All Other Real Property | [ ] 440 Other Civil Rights | [ ] 540 Mandamus & Other | | | [ ] 950 Constitutionality of |
| | | [ ] 550 Civil Rights | | | State Statutes |
| | | [ ] 555 Prison Condition | | | [ ] 890 Other Statutory Actions |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

28. 1331 be (8P)

BREACH OF CONTRACT, BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

## VII. REQUESTED IN COMPLAINT:

[ ] CHECK IF THIS IS A CLASS ACTION DEMAND UNDER F.R.C.P. 23

CHECK YES only if demanded in complaint:
JURY DEMAND: [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE

DOCKET NUMBER

DATE **9/23/03**

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # 97557   AMOUNT 4/50   APPLYING IFP   JUDGE   MAG. JUDGE

CB 9/26/03