USDC SCAN INDEX SHEET

















BJR   6/24/04   15:29

3:03-CV-01927   MACOVIAK V. PROVIDENT LIFE

*28*

*P/A.*





1  Edwin A. Oster (072169)
   Jenny H. Wang (191643)
2  BARGER & WOLEN LLP
   19800 MacArthur Boulevard, 8th Floor
3  Irvine, California  92612
   Telephone:  (949) 757-2800
4  Facsimile:  (949) 752-6313

5  Attorneys for Defendants
   Provident Life and Accident Insurance Company and
6  UnumProvident Corporation

7

8                  UNITED STATES DISTRICT COURT

9                 SOUTHERN DISTRICT OF CALIFORNIA

10

11

12  JOHN MACOVIAK, M.D., an individual,        ) CASE NO.: 03 CV 1927 BTM (JFS)
                                               )
13                  Plaintiff,                 ) MEMORANDUM OF POINTS AND
                                               ) AUTHORITIES IN SUPPORT OF
14          vs.                                ) DEFENDANTS MOTION FOR SUMMARY
                                               ) JUDGMENT
15  PROVIDENT LIFE AND ACCIDENT                )
    INSURANCE COMPANY;                         ) DATE:  August 6, 2004
16  UNUMPROVIDENT CORPORATION; and             ) TIME:  11:00 a.m.
    DOES 1 through 50, inclusive,              ) CTRM:  15
17                                             )
                    Defendants.                ) **[NO ORAL ARGUMENT UNLESS**
18  _____        **REQUESTED BY THE COURT]**
                                               ) [Filed Concurrently With:
19  AND RELATED COUNTERCLAIMS                  ) -   Notice of Motion;
                                               ) -   *Request for Judicial Notice;*
20                                               -   Separate Statement Undisputed Material
                                                     Facts;
21                                               -   Declaration of Joanne Goyette;
                                                 -   Declaration of Jenny H. Wang; and
22                                               -   Proposed Order.]

23                                               Complaint Filed:       September 26, 2003

24

25

26

27

28

BARGER & WOLEN LLP
19800 MACARTHUR BLVD.
EIGHTH FLOOR
IRVINE, CA 92612
(949) 757-2800

\\bwla6\lao\office7\7671\434\04pleadings\09 msj - p&a revised.doc           03 CV 1927 BTM (JFS)

# TABLE OF CONTENTS

PAGE

1. INTRODUCTION ........ 1

2. STATEMENT OF FACTS ........ 3

   A. The Policy ........ 3

   B. Macoviak's Disability Claim ........ 4

3. MACOVIAK'S BREACH OF CONTRACT CLAIM FAILS BECAUSE HE HAS NO DAMAGES ........ 9

   A. Macoviak Has No Economic Damages Because He Has Been Paid In Full ........ 10

   B. Macoviak Cannot Demonstrate Contract Damages By Claiming A Right To Future Policy Benefits ........ 10

   C. Macoviak Has Not Suffered Any Damages By Reason of Provident's Reservation of Rights ........ 12

4. MACOVIAK'S "BAD FAITH" CLAIM MUST FAIL BECAUSE HAS NOT SUFFERED ANY DAMAGES ........ 14

   A. Macoviak Cannot Demonstrate A Breach of Contract, Which Is A Prerequisite To Bad Faith ........ 14

   B. Attorney's Fees Cannot Constitute An Element Of Bad Faith Damages Because They Are Not Recoverable As A Matter of Law ........ 17

   C. Provident's Filing of The Declaratory Relief Claim Is Not, As A Matter of Law, Bad Faith ........ 18

5. CONCLUSION ........ 19

BARGER & WOLEN LLP
19800 MACARTHUR BLVD.
EIGHTH FLOOR
IRVINE, CA 92612
(949) 757-2800

03 CV 1927 BTM (JFS)

# TABLE OF AUTHORITIES

PAGE

**Cases**

*Avery v. Frederickson & Westbrook*
   67 Cal. App. 2d 334 (1944) ................................................................................ 10

*Brandt v. Superior Court*
   37 Cal. 3d 813 (1985) ........................................................................................ 18

*Brix v. Peoples Mutual Life Ins. Co.*
   2 Cal. 2d 446 (1935) .......................................................................................... 11

*Chateau Chamberay Homeowners Assn. v. Associated Int'l Ins. Co.,*
   90 Cal. App. 4th 335 (2001) ................................................................................ 1

*Covenant Mut. Ins. Co. v. Young*
   179 Cal. App. 3d 318 (1986) .............................................................................. 18

*Erreca v. Western States Life Ins.*
   19 Cal.2d 388 (1942) ......................................................................................... 11

*Gasnik v. State Farm Ins. Co.*
   825 F. Supp. 245 (E.D. Cal.1992) ...................................................................... 15

*Gourley v. State Farm Mut. Auto Ins. Co.*
   53 Cal. 3d 121 (1991) ........................................................................................ 15

*Gray v. Zurich Ins. Co.*
   65 Cal. 2d 263 (1966) ........................................................................................ 12

*Gruenberg v. Aetna Life Ins. Co.*
   9 Cal. 3d 566(1973) ........................................................................................... 15

*Kirk v. Mt. Airy Ins. Co.*
   951 P. 2d 1124 (1998) ........................................................................................ 12

*Love v. Fire Ins. Exchange*
   221 Cal. App. 3d 1136 (1990) .............................................................. 10, 14, 15

*Massachusetts Cas. v. Rossen*
   953 F. Supp. 311 (C.D. Cal. 1996) ..................................................................... 12

*Maxwell v. Fire Ins. Exchange*
   60 Cal. App. 4th 1446 (1998) .............................................................. 15, 16, 17

*Provident Life and Accident Ins. Co. v. Van Gemert*
   262 F.Supp. 2d 1047 (C.D. Cal. 2003) ............................................................ 1, 18

*Regan Roofing Co. v. Superior Court*
   24 Cal. App. 4th 425(1994) ............................................................................... 10

BARGER & WOLEN LLP
19800 MACARTHUR BLVD.
EIGHTH FLOOR
IRVINE, CA 92612
(949) 757-2800

i

03 CV 1927 BTM (JFS)

*Travelers Indem. Co. v. Walker & Zanger, Inc.*
    221 F. Supp. 2d 1224 (S.D. Cal. 2002) ................................................................ 12

*Truck Ins. Exch. v. Superior Court*
    51 Cal. App. 4th 985(1996) ................................................................................ 12

*Waters v. USAA*
    41 Cal. App. 4th 1063 (1996) .......................................................... 10, 15, 16, 17

**Treatises**

B. E. Witkin, Summary of California Law, 9th Ed., Vol. 1, Contracts, §813 .............................. 10

Croskey & Kaufman, Cal. Prac. Guide:  Insurance Litigation, 12:813, p. 12C-4 (The Rutter
    Group 1996) ...................................................................................................... 15

BARGER & WOLEN LLP.
19800 MACARTHUR BLVD.
EIGHTH FLOOR
IRVINE, CA 92612
(949) 757-2800

03 CV 1927 BTM (JFS)

1.  **INTRODUCTION**

        The law provides that an insurer who chooses to pay its insured policy benefits, even under a reservation of rights, cannot be liable for breach of the insurance policy or bad faith.  That is why many insurers who have a legitimate dispute with their insured about whether policy benefits are payable will not cease benefits but continue to pay its insured under a reservation of rights while simultaneously pursuing a declaratory relief action against its insured.  The court in *Provident Life and Accident Ins. Co. v. Van Gemert*, 262 F.Supp. 2d 1047, 1052 (C.D. Cal. 2003) explained the principle of encouraging declaratory relief actions by insurers as follows:

> '[W]here there is a genuine issue as to the insurer's liability under the
> policy for the claim asserted by the insured, there can be no bad faith
> liability imposed on the insurer for advancing its side of that dispute.'
> [citation omitted]
>
>                                        . . .
>
> **In such circumstances, an insurer should generally be**
> **encouraged, and not punished, for seeking judicial guidance.**

*Id.* at 1052 (emphasis added), citing *Chateau Chamberay Homeowners Assn. v. Associated Int'l Ins. Co.*, 90 Cal. App. 4th 335 (2001).

        That is precisely what happened here.  Plaintiff John Macoviak submitted a claim under his disability income policy to Provident Life and Accident Insurance Company claiming total disability from his occupation as a cardio-thoracic surgeon.  Although Provident had paid Macoviak maximum policy benefits since the inception of his claim, after investigating the claim and obtaining the opinions of three independent medical examiners who all reported that Macoviak could return to his occupation, in August 2003, Provident notified Macoviak that further benefits would cease but enclosed with that letter a check for $36,000 representing payment in full through

BARGER & WOLEN LLP
19800 MACARTHUR BLVD.
EIGHTH FLOOR
IRVINE, CA 92612
(949) 757-2800

-1-                                03 CV 1927 BTM (JFS)

1   November 25, 2003. Under the terms of the policy, the next payment, if any, would not be due until

2   December 25, 2003 at the earliest because payments are made on an accrual basis in arears.

3

4         Months before his benefits ran out, on September 26, 2003, Macoviak filed this lawsuit

5   against Provident for breach of contract and bad faith. Provident then decided to reinstate his

6   benefits and continue paying while pursuing a counterclaim against him in this action for

7   declaratory relief and restitution of policy benefits paid under reservation of rights. Provident

8   informed Macoviak accordingly by a letter dated December 23, 2003 and at the same time included

9   a check for $12,000 representing payment for benefits due on or after December 25, 2003. Since

10  then, Provident has continuously paid Macoviak maximum policy benefits under reservation of

11  rights. There has never been any gap or delay in benefit payments. Stated differently, there has

12  never been a payment that was allegedly due and not paid. Macoviak has been fully paid at all

13  times, including at the time he filed suit and through the present. This means that, as a matter of

14  law, Macoviak cannot demonstrate any contract or bad faith damages. That is the reason for this

15  motion – Macoviak cannot demonstrate damages, an essential element of his breach of contract and

16  bad faith claims, so those claims should be eliminated as a matter of law.[1]

17

18        Provident's decision to continue payment in order to avoid liability for breach of contract

19  and bad faith is perfectly appropriate, and, in reality, protects the interest of both parties. By

20  choosing to pay, Provident avoids liability for certain claims as a matter of law, and Macoviak gets

21  the economic advantage of continuing, maximum policy benefits while the parties litigate the

22  declaratory relief claim.

23

24

25

26

27

28

---

[1] If Provident's motion is granted, it would not mean the end of this lawsuit because Provident has filed a counterclaim for declaratory relief asking this Court to declare the rights and obligations of the parties under the insurance policy that Macoviak has sued upon.

BARGER & WOLEN LLP
18600 MACARTHUR BLVD.
EIGHTH FLOOR
IRVINE, CA 92612
(949) 757-2800

03 CV 1927 BTM (JFS)

## 2.    **STATEMENT OF FACTS**

Except as otherwise indicated, the following facts are set forth in the accompanying Separate Statement of Material Facts, the insurance policy not in dispute, and Provident's counterclaim against Macoviak for declaratory relief and restitution at issue herein.

### A.    **The Policy**

Provident issued a Disability Income Policy to Macoviak, policy number 06-337-5079055 (the "Policy"), dated December 16, 1992.  *See* the accompanying Separate Statement of Material Facts ("Separate Statement") No., 1.  In the event of total disability, the Policy provides for disability income insurance benefits from injury or sickness, commencing on the first date after the 90-day elimination period, *i.e.,* 91 days after the date of disability, in the amount of $12,000 per month for total disability.  *See* Separate Statement No. 2.

"Total Disability" under the Policy is defined as follows: "Total Disability or totally disabled means that due to Injuries or Sickness:  (1) you are not able to perform the substantial and material duties of your occupation; and (2) you are receiving care by a Physician which is appropriate for the condition causing the disability.  We will waive this requirement when continued care would be of no benefit to you."

Disability payments are made on an accrual, monthly basis, and they are made after the fact. That is, the insured must submit proof of loss for any given month in which disability is claimed (usually in the form of a signed Attending Physician's Statement certifying disability), and then once the company receives that proof of loss, a check is issued for the prior month's disability.

BARGER & WOLEN LLP
19800 MACARTHUR BLVD.
EIGHTH FLOOR
IRVINE, CA 92612
(949) 757-2800

-3-                                              03 CV 1927 BTM (JFS)

**B.**   **Macoviak's Disability Claim**

Macoviak submitted a claim form to Provident in February 2002, claiming that he was totally unable to work as a cardiothoracic surgeon.  Upon receipt of his claim, Provident immediately began investigating the claim by, among other things, obtaining the records of his treating physician, psychiatrist Thomas Flanagan.  What Provident learned from the records was that Macoviak had been fired by his employer in January 2002.  Immediately after being fired, he called Dr. Flanagan, whom he had not seen in about six months, and told Dr. Flanagan that he believed he was disabled and unable to perform cardio-thoracic surgery.  According to the records, he made no mention of the fact that he had been fired.  Dr. Flanagan then certified that Macoviak was disabled as of January 29, 2002.  That is, Macoviak was fired first, and then he consulted with his doctor.

Specifically, Macoviak's claim form to Provident stated the following about his alleged total disability:

"In May 1999 I had the onset of severe depression and anxiety.  Dr. Flanagan placed me on Prozac and then Depakote.  In the past six months my judgment in caring for patients has deteriorated.  I have severe tremor and diarrhea when I perform heart surgery and heart and lung transplants.  My peers and family have noted my erratic behavior and mood swings.  I cannot do heart surgery."

At the same time, Dr. Flanagan submitted an Attending Physician's Statement ("APS") form certifying disability since January 29, 2002 due to Bipolar Mood Disorder.  However, according to Dr. Flanagan's records obtained and reviewed by Provident as part of its claim investigation, Macoviak was fired from his job at the University of California, San Diego ("UCSD") in January 2002 due to his inability to get along with his colleagues, at which time Macoviak suddenly called Dr. Flanagan (whom he had not seen since June 25, 2001) and told him "I can't do surgery

BARGER & WOLEN LLP
19800 MACARTHUR BLVD.
EIGHTH FLOOR
IRVINE, CA 92612
(949) 757-2800

-4-                         03 CV 1927 BTM (JFS)

1   anymore."

2        Notwithstanding that Macoviak was fired from his job before he consulted his doctor,

3   following the 90-day elimination period set forth in the Policy, Provident, in good faith, began

4   making disability benefit payments to Macoviak under reservation of rights. *See* Separate

5   Statement No. 3. As of this date, Provident has paid and continues to pay Macoviak, under

6   reservation of rights, monthly benefits of $12,000. *See* Separate Statement No. 4.

7

8        During the course of the claim investigation, in order to get a better understanding of

9   Macoviak's claim, and while paying him benefits, Provident had Macoviak independently examined

10   by clinical psychologist Lynette Rivers, Ph.D., forensic psychiatrist Matthew Carroll, M.D. and

11   psychiatrist Stephen Heidel, M.D., all of whom concluded that Macoviak was not psychiatrically

12   impaired from returning to work as a cardiothoracic surgeon.

13

14   **<u>Examination By Dr. Rivers</u>**

15

16        In December 2002, Dr. Rivers reviewed Macoviak's medical records, conducted a battery of

17   neuropsychological testing on Macoviak and took a detailed clinical history that resulted in a 43-

18   page report. She also spoke directly with Macoviak's treating psychologist, Dr. Douglas Riddle.

19   She learned from Macoviak that between 1995 and 1997, he obtained an MBA and that at the time

20   he claimed to be totally disabled, he was working 16 to 20 hours a week as a consultant in the

21   medical device arena, including traveling to the Bay Area once a month for work. He also spent his

22   time with his two young children (both well under the age of 10), exercising and looking for

23   employment where he could put his MBA to use.[2] Macoviak also reported that he never had

24   problems with the results of his surgery, even though he had been on Prozac since 1999 and

25   Depakote since early 2001 (one year before he went on disability asserting that Depakote caused

26

---

27   [2] Macoviak's job search ultimately proved fruitful. His recent discovery responses in this action
state that he is currently earning $184,000 per year working as a consultant for a medical device

28   company. *See* the accompanying Declaration of Jenny H. Wang, Exhibit "1," which is Macoviak's
responses to interrogatories, at page 14, number 9.

BARGER & WOLEN LLP
19800 MACARTHUR BLVD.
EIGHTH FLOOR
IRVINE, CA 92612
(949) 757-2800

-5-

03 CV 1927 BTM (JFS)

1   him hand tremors that prevented him from doing surgery).  When Dr. Rivers asked Dr. Macoviak

2   what would have to change for him to go back to work as a surgeon, rather than discussing working

3   conditions, change in medications, or anything else, Dr. Macoviak simply said "Nothing."

4

5       Dr. Rivers concluded that there was little evidence to support a diagnosis of Bipolar

6   Disorder and that symptoms of hypomania or manic phase were not supported in the records or

7   during the clinical interview.  She also said there was no indication that Macoviak evidenced

8   pressured speech, a flight of ideas, distractibility, or excessive involvement in pleasurable activities,

9   and that his behavior while at UCSD did not appear to be the result of a manic episode.  Indeed, she

10  felt his personality traits had actually helped him to achieve a high level of success as a heart and

11  lung transplant surgeon.  Dr. Rivers opined that Macoviak was dissatisfied with his chosen

12  profession and that he was unmotivated to return to work in that field.

13

14  **Examination By Dr. Carroll**

15

16      In January 2003, board-certified forensic psychiatrist Dr. Carroll conducted a psychiatric

17  IME of Macoviak, including a review of his medical records, and the testing performed by Dr.

18  Rivers.  He performed a detailed clinical interview of Macoviak and rendered a 25-page explanation

19  of his findings.  As he had with Dr. Rivers, Macoviak explained his business ventures and that he

20  was actively looking for funding in the medical device arena for a company he developed in 1995.

21  He had designed a medical device that was in clinical trials.   Macoviak also described an energy

22  venture that he invested in with an energy attorney.  They had tried to establish an energy insurance

23  company in the years 2000 and 2001, but due to the energy crisis in California, the venture failed.

24
25
26
27
28

BARGER & WOLEN LLP
19800 MACARTHUR BLVD.
EIGHTH FLOOR
IRVINE, CA 92612
(949) 757-2800

1    Dr. Carroll generally agreed with Dr. River's conclusions and felt that Macoviak had a

2  depressive disorder, not bipolar disorder, because he did not have the requisite history of hypomanic

3  episodes characteristic of the disorder.  To the contrary, Macoviak had by his own history generally

4  functioned well throughout his life – so well that he was able to go into a profession that required

5  highly goal directed, rigorous and vigilant activity.  Accordingly, Dr. Carroll opined "with

6  reasonable medical certainty, that Dr. Macoviak's psychiatric symptoms have not limited his

7  technical proficiency to perform Cardiothoracic Surgery.  He stated that his surgical results have

8  always been excellent."  Dr. Carroll did not believe Macoviak's Bipolar disorder was a disabling

9  condition, and Macoviak's termination from UCSD was not due to Bipolar symptoms but due to

10  personality problems, specifically issues with anger and poor interpersonal skills.  Indeed,

11  Macoviak had treated with his psychiatrist, Dr. Flanagan, in 1999, including taking Depakote at that

12  time, and Macoviak continued to perform surgeries in 2000 and 2001 before claiming disability in

13  January 2002.  Dr. Carroll also stated "Dr. Macoviak feels that the side effects of the psychiatric

14  medications he has taken preclude him from functioning as a Cardiothoracic Surgeon.  While is it

15  true that his stated side effects [of hand tremors, diarrhea and drowsiness at night] would preclude

16  him from this occupation, there are alternative medications and treatments that have not been

17  tried."[3]

18

19    Dr. Carroll, like Dr. Rivers, generally felt that Macoviak made a choice not to return to

20  work, that he had not made any effort to return to work in that profession and that Macoviak had an

21  "occupational problem," not a medical inability to return to work in his profession.  Dr. Carroll

22  concluded, "In my opinion, if motivated, he could return to work if he is not taking medication that

23  cause side effects that compromise his surgical abilities.  He may not need to be on mood stabilizers

24  if he is successful in therapy.  There are alternative mood stabilizers for him to try."

25

26

27

28

---

[3]  Dr. Carroll did not make an independent finding that Macoviak's medications caused him to have
these side effects.  Rather, he accepted the truth of Macoviak's assertion that he experienced these
side effects.

BARGER & WOLEN LLP
19800 MACARTHUR BLVD.
EIGHTH FLOOR
IRVINE, CA 92612
(949) 757-2800

-7-                          03 CV 1927 BTM (JFS)

1    On March 6, 2003, Macoviak wrote to Provident complaining of what he believed were

2    various errors in Dr. Carroll's report, such as the correct name of the university he had attended, the

3    year of his graduation, the year Macoviak's wife miscarried and whether Macoviak reported having

4    attended Alcoholics Anonymous.  Because of his complaints regarding Dr. Carroll's report,

5    Provident decided to exercise its contractual right to have Macoviak examined again by another

6    psychiatrist, this time, Dr. Stephen Heidel.

7

8    **Examination By Dr. Heidel**

9

10   In July 2003, Dr. Heidel performed a detailed clinical interview of Macoviak and  reviewed

11   all of his medical records and the prior reports of Drs. Rivers and Carroll.  Dr. Heidel also spoke

12   directly with Macoviak's treating psychiatrist, Dr. Flanagan, and his treating psychologist, Dr.

13   Riddle.  Dr. Heidel's were summarized in a 17-page report.  Dr. Heidel believed that although

14   Bipolar disorder was the correct diagnosis, Macoviak did not have psychiatric symptoms that would

15   prevent him from working as a cardiothoracic surgeon and that "[l]ifestyle choice is impacting his

16   claim."  Specifically, Dr. Heidel cited to Macoviak's stated intention of never doing surgery again

17   and his enthusiasm about business consulting work.  ("Secondary gain is an issue with his disability

18   claim.  He needs the disability income to support his family and to launch a career in consulting.

19   Ultimately I believe he is motivated to become productive and financially successful.")

20

21   Despite his assertion that he was unable to perform surgery due to hand tremors caused by

22   medication, Dr. Heidel observed that based on Macoviak's history, he was able to perform surgery

23   in the past while on medication that caused tremor (possibly Zoloft in 1991, Prozac from 1999-2001

24   and Depakote from 2000-2001).  Also, Dr. Heidel felt that there were other, alternative medications

25   that could be tried to bring those alleged side effects under control.  Provident's declaratory relief

26   counterclaim is based on Macoviak's obligation under the law and the policy to take medication that

27   would control these side effects and enable him to return to work in his occupation.

28

BARGER & WOLEN LLP
19800 MACARTHUR BLVD.
EIGHTH FLOOR
IRVINE, CA 92612
(949) 757-2800

-8-                                    03 CV 1927 BTM (JFS)

**Macoviak's Premature Lawsuit**

Macoviak's own Dr. Flanagan then informed Provident in June 2003 that Macoviak could return to his prior occupation by October 2003. *See* the accompanying Declaration of Joanne Goyette, Exhibit "3." Accordingly, by letter dated August 29, 2003, Provident notified Macoviak that he did not meet the definition of total disability in the Policy and sent him a $36,000 check in order to assist him in his return to work efforts, making the claim fully paid to November 25, 2003. *See* Separate Statement No. 5. Provident invited Macoviak to submit any additional information to support his disability claim and offered to have its appeals unit consider his administrative appeal of the decision if he wished to submit one. Macoviak did neither. Rather, he filed this lawsuit for breach of contract and bad faith on September 26, 2003, two months before his benefits ran out. *See* Separate Statement No. 6.

Thereafter, by letter dated December 23, 2003, Provident informed Macoviak that it would reinstate his benefits under reservation of rights until further notice, *i.e.*, that Provident would pay him until this Court resolved the issues raised by Provident's declaratory relief counterclaim, assuming he did not return to work in his occupation, and enclosed an additional benefit check for that month in the amount of $12,000. *See* Separate Statement No. 7. This made the claim fully and timely paid to December 25, 2003, and Provident has continued to pay Macoviak maximum policy benefits to date. *See* Separate Statement No. 8.

3.    **MACOVIAK'S BREACH OF CONTRACT CLAIM FAILS**
      **BECAUSE HE HAS NO DAMAGES**

Macoviak's breach of contract claim must fail because he cannot demonstrate damages, which is an essential element of the claim.

BARGER & WOLEN LLP
19800 MACARTHUR BLVD.
EIGHTH FLOOR
IRVINE, CA 92612
(949) 757-2800

-9-                                     03 CV 1927 BTM (JFS)

1    The essential elements of a claim for breach of contract are: (1) the contract, (2)

2    plaintiff's performance or excuse from nonperformance, (3) defendant's breach, and (4) **damage**

3    **resulting from the breach**. *Regan Roofing Co. v. Superior Court*, 24 Cal. App. 4th 425, 434

4    (1994).  In order to prevail on his breach of contract claim, Macoviak must show that Provident

5    withheld or delayed policy benefits. *See Love v. Fire Ins. Exchange*, 221 Cal. App. 3d 1136, 1151

6    n. 10 (1990) ("absent an actual withholding of benefits due, there is no breach of contract"); *see*

7    *also Waters v. USAA,* 41 Cal. App. 4th 1063 (1996) (absent damages, there can be no breach of

8    contract).  Provident has (without delay) paid and continues to pay Macoviak maximum policy

9    benefits of $12,000 a month.  By virtue of that fact alone, Provident cannot have breached the

10    contract.

11

12    **A.   Macoviak Has No Economic Damages Because He Has Been Paid In Full**

13

14    It is black letter law that only economic damages are recoverable in contract. *See* Witkin,

15    Contracts, §813.  Damages are measured by the economic value of performance that has been

16    withheld.  *Id.* at §819 (citing *Avery v. Frederickson & Westbrook,* 67 Cal. App. 2d 334, 336 (1944).

17    Thus, Macoviak's only remedy for Provident's alleged breach of contract is the equivalent of

18    performance; that is, payment of policy benefits.  Witkin, Contracts, *supra.*  However, Provident

19    has never stopped or delayed paying him full policy benefits.  In short, Macoviak improperly sued

20    for something he already had and continues to receive: $12,000 in monthly disability payments.

21

22    **B.   Macoviak Cannot Demonstrate Contract Damages By Claiming A Right To**

23    **Future Policy Benefits**

24

25    Future policy benefits that may some day become due cannot constitute contract damages

26    because Provident has no contractual obligation to pay Macoviak future policy benefits.  That is

27    because the policy sued upon is an installment contract under which benefits do not accrue until

28    Macoviak first demonstrates disability in any given month.  That is, Macoviak does not now have a

BARGER & WOLEN LLP
18800 MACARTHUR BLVD.
EIGHTH FLOOR
IRVINE, CA 92612
(949) 757-2800

-10-                                  03 CV 1927 BTM (JFS)

1   claim for breach of contract based on future policy benefits.  Long ago, the California Supreme

2   Court in *Brix v. Peoples Mutual Life Ins. Co.*, 2 Cal. 2d 446 (1935) explained this principle as

3   follows:

5        In the present action the breach of the contract was the failure of the defendant

6        [insurer] to pay the **accrued** installments.  This default in the payment of these

7        accrued installments did not work a breach of the entire contract, the contract

8        still subsists as to future benefits, **and the default only affects the rights of**

9        **the parties as to benefits accrued**.  It is obvious that it does not work a breach

10       as to future benefits, since, as to such, the liability of the defendant has not

11       become fixed, but remains contingent upon the condition of the plaintiff being

12       such as to entitle him to demand them.

14  *Id.*, at 452-453 (internal quotations omitted) (emphases added).

16       The court in *Erreca v. Western States Life Ins.*, 19 Cal.2d 388, 403 (1942), followed the

17  above reasoning, stating that a disability policy:

19       [Constitutes] a continuing contract for periodic installment payments

20       depending upon the insured's continued disability, and he has no cause of

21       action, nor the insurer any liability, except for benefits which have accrued.

22       **Because the insurer's liability for future benefits is contingent upon the**

23       **existence of total disability at that time, its refusal, for any reason, to pay**

24       **benefits does not entitle the insured to treat the entire contract as**

25       **repudiated and ask for future benefits upon a theory of anticipatory**

26       **breach**.

27  *Id.* (emphasis added).

28

BARGER & WOLEN LLP
19800 MACARTHUR BLVD.
EIGHTH FLOOR
IRVINE, CA 92612
(949) 757-2800

-11-                                          03 CV 1927 BTM (JFS)

1    Stated differently, Macoviak cannot show contract damages by alleging a right to future

2    policy benefits because Provident does not, as a matter of law, have any liability now for benefits

3    that may become due.

4

5    **C.    Macoviak Has Not Suffered Any Damages By Reason of Provident's**

6    **Reservation of Rights**

7

8    Any claim that Provident breached the contract by paying benefits under a reservation of

9    rights is without merit.  Courts have recognized that insurers faced with a question of coverage can

10   perform contractual duties under a reservation of rights in order to insulate itself from liability to the

11   insured for breach of contract and bad faith.  *See Travelers Indem. Co. v. Walker & Zanger, Inc.,*

12   221 F. Supp. 2d 1224, 1231 (S.D. Cal. 2002), citing *Truck Ins. Exch. v. Superior Court,* 51 Cal.

13   App. 4th 985, 994 (1996) (An insurer can legitimately avoid liability for breach of contract and bad

14   faith by reserving its rights and simultaneously filing an action against its insured for declaratory

15   relief); *see also Gray v. Zurich Ins. Co.,* 65 Cal. 2d 263, 279 (1966) (An insurer faced with a

16   question of coverage may simultaneously perform under the contract and reserve its right against its

17   insured to assert noncoverage);  *see also, Massachusetts Cas. v. Rossen,* 953 F. Supp. 311, 315

18   (C.D. Cal. 1996); *see also, Kirk v. Mt. Airy Ins. Co.,* 951 P. 2d 1124, 1127, n. 3 (1998) ("The insurer

19   can easily avoid all these issues [relating to bad faith liability] by defending with a reservation of

20   rights.").

21

22   In *Rossen*, the court endorsed the validity of a disability insurer's reservation of rights as

23   follows:

24

25   A reservation of rights is made by an insurer to protect that insurer's rights to

26   later seek reimbursement for payments made under reservation of rights if it is

27   shown that the insured was not entitled to such payments. **A reservation or**

28   **rights protects an insurer from potential liability for bad faith** if it were to

BARGER & WOLEN LLP
19800 MACARTHUR BLVD.
EIGHTH FLOOR
IRVINE, CA 92612
(949) 757-2800

-12-                                    03 CV 1927 BTM (JFS)

1   withhold payments, and it also provides the insured with the use of the

2   payments until the determination is made. Thus, the use of a reservation of

3   rights protects both parties.

4   *Id.*, at 315 (emphasis added).

5

6   Judge Dickran Tevrizian of the United States District Court in the Central District of

7   California very recently dismissed a disability claimant's breach of contract and bad faith claims

8   against his disability insurer under facts very similar to the case at bar in a case called *Michael J.*

9   *Sherman v. The Paul Revere Life Ins. Co.*, Case No. CV 03-5730 DT (PJWx). *See* the

10   accompanying Request for Judicial Notice ("RJN"), Exhibit "1." There, the court dismissed the

11   insured's breach of contract and bad faith claims against his insurer based on lack of damages

12   where, as in this case, the insurer never stopped paying full policy benefits and continued to make

13   payments under reservation of rights while pursuing declaratory relief and restitution claims against

14   the insured. In doing so, the court state, "[a] reservation of right where the insurance carrier has a

15   contested duty to pay benefits to the insured does not amount to a breach of contract." *See id.*, at p.

16   7. The court went on to state, "[s]ince the full benefits have been paid to Plaintiff, he has received

17   the economic benefit equivalent to full performance of the contract. As such, this Court finds that

18   he has suffered no damages at this time, and thus cannot sustain a Breach of Contract claim." *See*

19   *id.*, at p. 8.

20

21   Judge Tevrizian then went on to dismiss the insured's bad faith claim as a matter of law

22   because, as with the breach of contract claim, the insured could not demonstrate any damages

23   resulting from the insurer's continued payment of policy benefits under reservation of rights. *See*

24   *id.*, at 10 – 11 ("A bad faith claim cannot be maintained without this basic requirement [of

25   withholding of policy benefits]…" and "[b]ecause Defendants have not ceased benefit payments

26   under the Policy, Plaintiff has failed to state a claim for Bad Faith.") This case is no different; that

27   is, Provident has paid Macoviak maximum policy benefits since the inception of this claim to date,

28

BARGER & WOLEN LLP
19800 MACARTHUR BLVD.
EIGHTH FLOOR
IRVINE, CA 92612
(949) 757-2800

-13-                                         03 CV 1927 BTM (JFS)

1    so he cannot demonstrate the requisite damages to maintain either his breach of contract and bad

2    faith claims.

3

4            **4.**      **MACOVIAK'S "BAD FAITH" CLAIM MUST FAIL**

5                  **BECAUSE HAS NOT SUFFERED ANY DAMAGES**

6

7       Macoviak's bad faith claim fails as a matter of law for a number of reasons, all relating to

8    lack of damages. First, he cannot demonstrate a breach of contract in the first instance because he

9    lacks contract damages, and a breach of contract is a prerequisite to a bad faith claim. Second, he

10    cannot demonstrate any economic damages (because he has been paid full Policy benefits), meaning

11    his emotional distress claim must fail. Third, he cannot rely on attorney's fees as an element of

12    damages because under the "American Rule," each party is responsible for his own attorney's fees

13    absent a statute or agreement providing for attorney's fees, of which there are none. Each of these

14    reasons is discussed in turn below.

15

16    **A.**    **Macoviak Cannot Demonstrate A Breach of Contract, Which Is A Prerequisite**

17        **To Bad Faith**

18

19       Bad faith cannot stand alone as an independent cause of action. Rather, it has as a

20    prerequisite an underlying breach of contract. *See Love v. Fire Ins Exchange*, 221 Cal.App.3d

21    1136, 1152 (1990) ("The covenant of good faith and fair dealing is implied in law to assure that a

22    contracting party 'refrain[s] from doing anything to injure the right of the other to receive the

23    benefits of the agreement.' In essence, the covenant is implied as a **supplement** to the express

24    contractual covenants.... Absent that primary right, however, the **auxiliary** implied covenant has

25    nothing upon which to act as a supplement, and should not be endowed with an existence

26    independent of its contractual underpinnings.") As discussed above, Macoviak cannot demonstrate

27    an underlying breach of contract because he lacks contract damages.

28

BARGER & WOLEN LLP
19800 MACARTHUR BLVD.
EIGHTH FLOOR
IRVINE, CA 92612
(949) 757-2800

-14-          03 CV 1927 BTM (JFS)

1    To prevail on his bad faith claim, Macoviak must prove two essential elements through

2    competent evidence: "(1) benefits due under the policy must have been withheld; and (2) the reason

3    for withholding benefits must have been unreasonable or without proper cause." *Love, supra*, at

4    1151 (emphasis added); *see also* Croskey & Kaufman, Cal. Prac. Guide: Insurance Litigation,

5    12:813, p. 12C-4 (The Rutter Group 1996) ("absent an unreasonable delay or actual withholding of

6    benefits, there is no breach of contract and likewise no breach of the implied covenant"). He cannot

7    prove an essential element of the claim that benefits are or were due because he has been fully and

8    timely paid.

9

10    In California, an insured cannot maintain a claim for breach of the covenant of good faith

11    and fair dealing where the insurer has timely paid benefits. *Gruenberg v. Aetna Life Ins. Co.*, 9 Cal.

12    3d 566, 575 (1973); *Love, supra*, at 1153 (a bad faith claim cannot be maintained unless policy

13    benefits are due); *Gasnik v. State Farm Ins. Co.*, 825 F. Supp. 245, 251 (E.D. Cal.1992)(motion to

14    dismiss granted where plaintiffs could not prove any benefits were due under the policy).

15

16    Absent an unreasonable delay or actual withholding of benefits causing substantial

17    economic damage, there is no breach of contract and likewise no breach of the implied covenant of

18    good faith and fair dealing. *Waters, supra*, at 1077 (citing *Gourley v. State Farm Mut. Auto Ins. Co.*

19    53 Cal. 3d 121 (1991)(a claim for bad faith is defined by actual financial loss). Here, Provident

20    never stopped or delayed unreasonably paying benefits. Macoviak's vague, boilerplate allegations

21    of bad faith damages are insufficient to state a claim for bad faith. An award of damages in a bad

22    faith case, including damages for emotional distress, must be incidental to the award of economic

23    damage, and Macoviak cannot demonstrate any such damage. *See Waters*, 41 Cal. App. 4th, *supra*,

24    at 1070-74; *see also, Maxwell v. Fire Ins. Exchange*, 60 Cal. App. 4th 1446, 1451 (1998).

25

26    The case of *Maxwell, supra*, is instructive on this issue. In *Maxwell*, plaintiff received a

27    verdict against insured tortfeasors for which two insurers were liable. After the verdict, the insurers

28    paid only a portion of the amount due under the judgment and plaintiff filed suit for breach of

BARGER & WOLEN LLP
19800 MACARTHUR BLVD.
EIGHTH FLOOR
IRVINE, CA 92612
(949) 757-2800

-15-                                                03 CV 1927 BTM (JFS)

1   contract and bad faith. Subsequently, 81 days after the judgment, the two insurers paid the

2   judgment in full, including accrued interest. Thereafter, the insurers moved for summary judgment,

3   contending that plaintiff had no evidence of financial loss other than the loss of use of the money

4   during the 81-day period and, therefore, plaintiff had no damages. The trial court granted judgment

5   in the insurer's favor.

6

7        On appeal, plaintiff claimed error alleging that the withholding of the money owed by the

8   insurers was *per se* economic loss sufficient to allow recovery of damages for emotional distress.

9   The appellate court found that plaintiff's breach of contract action failed because the insurers had

10  paid the amounts due under the judgment; accordingly, there was no damage from any breach. *Id.*

11  at 1450. The court then turned to whether damages for emotional distress were recoverable based

12  on plaintiff's allegations of bad faith and found that they were not.

13

14        The *Maxwell* court recited the well-established rule that an award of damages in a bad

15  faith case, including emotional distress, is incidental to the award of economic damages because

16  such an action seeks recovery of a property interest, not personal injury. *Id.* (citing *Waters, supra,*

17  at 1070-74). It then concluded that the economic damage must be "substantial" and the delay,

18  including a claim for loss of use of money, was not sufficient economic damage to support

19  plaintiff's claim for damages for emotional distress. Further, the court noted that there were no

20  costs associated with retaining legal counsel because Maxwell's attorney's fees and costs were

21  contingent. *Id.* at 1450. The court held that because Maxwell "proffered no proof of financial loss"

22  he failed to establish the requisite element of damages, and summary judgment was properly

23  granted as to the bad faith claim. *Id.* at 1448, 1452.

24

25        Here, not a single one of Macoviak's boilerplate allegations of bad faith asserts any

26  specific economic loss. *See* Macoviak's First Amended Complaint *("FAC"),* on file with this

27  Court, ¶¶ *29-31.* Macoviak premises his claim for economic loss on three allegations. First,

28  Macoviak vaguely alleges that he has suffered "damages under the Policy, plus interest, for a total

BARGER & WOLEN LLP
18800 MACARTHUR BLVD.
EIGHTH FLOOR
IRVINE, CA 92612
(949) 757-2000

1   amount to be shown at trial." *FAC*, ¶ 29.  Second, he claims that he has suffered emotional distress

2   "and other incidental damages and out-of-pocket expenses." *Id.* at ¶ 30.  Third, he asserts that he

3   was "compelled to retain legal counsel to obtain benefits due under the Policy" *Id.* at ¶ 31.  None of

4   these claims meet the test set forth in *Waters;* that is, the asserted emotional distress damages are

5   not recoverable as a matter of law because they are not incidental to any economic damages.

6   Macoviak has no economic damages because his claim is fully paid to date.

7

8         Macoviak's claim that he suffered economic loss "in an amount to be proven at trial"

9   fails because he has not been deprived of *any* benefits whatsoever.  A reservation of rights, standing

10  alone, cannot give rise to economic loss because Macoviak has continued to receive maximum

11  policy benefits of $12,000 per month.  Macoviak's vague claim "economic damages" premised on

12  nothing more than a reservation of rights is insufficient to establish the "substantial damages"

13  required to support a claim for bad faith.  *Waters, supra,* at 1073.  Without an allegation of specific

14  economic damages, Macoviak's claim for "emotional distress" fails as a matter of law.  *Maxwell,*

15  *supra,* at 1448.

16

17        **B.    Attorney's Fees Cannot Constitute An Element Of Bad Faith Damages Because**

18             **They Are Not Recoverable As A Matter of Law**

19

20        Any claim that Macoviak was forced to hire an attorney and incur fees to obtain contract

21  benefits cannot support his bad faith claim.  Any contingency fees cannot support a claim that

22  Macoviak suffered an economic loss.  The case of *Maxwell, supra,* specifically prohibits basing

23  damages on attorney's fees that are on a contingency basis.  *Maxwell, supra,* at 1450 (rejecting the

24  insured's argument that he had suffered economic loss in the form of contingent attorney's fees

25  incurred to sue his insurer for breach of contract and bad faith).  Even an hourly fee arrangement

26  will not support a damage award because Macoviak cannot recover attorney's fees in and of

27  themselves where he cannot demonstrate that Provident breached the Policy in the first place.

28

BARGER & WOLEN LLP
16800 MACARTHUR BLVD.
EIGHTH FLOOR
IRVINE, CA 92612
(949) 757-2800

-17-                                03 CV 1927 BTM (JFS)

1    More importantly, under the well-established "American Rule," parties to litigation are

2    not entitled to attorney's fees absent a statute or agreement that provides for them, and in this case,

3    it is undisputed that there is no such statute or agreement. *See Covenant Mut. Ins. Co. v. Young*, 179

4    Cal. App. 3d 318, 321 (1986) ("[T]he so-called American rule requires both winners and losers to

5    bear their own legal fees in this as in all litigation. The California version of the 'American rule' is

6    found in Code of Civil Procedure section 1021 . . . ."). Under *Brandt v. Superior Court*, 37 Cal. 3d

7    813 (1985), an insured who sues his insurer for breach of contract and bad faith may recover

8    attorney's fees, but he must *first* prove a breach of contract *and* bad faith. Even then, the insured

9    can only recover attorney's fees "incurred to obtain the policy benefits, which award must not

10   include attorney's fees incurred to recover any other portion of the verdict." *Brandt, supra*, at 800-

11   801. This means at best, assuming he prevails on his bad faith claim, Macoviak can only recover

12   attorney's fees incurred to recover Policy benefits, but Macoviak has no breach of contract claim

13   because he lacks damages in that he has already been paid fully Policy benefits.

14

15   **C.    Provident's Filing of The Declaratory Relief Claim Is Not, As A Matter of Law,**

16   **Bad Faith**

17

18   Macoviak cannot demonstrate bad faith damages by citing to his defense of Provident's

19   declaratory relief and restitution counterclaims. Provident is entitled to seek judicial guidance in

20   ascertaining its contractual obligation without facing liability for bad faith. The filing a declaratory

21   relief action where liability is unclear cannot give rise to either breach of contract or bad faith under

22   these circumstances. *Van Gemert, supra*, at 1052 (An insurer that advances its side of a policy

23   dispute by pursuing a declaratory relief claim against its insured is not, as a matter of law, liable for

24   bad faith).

25

26

27

28

BARGER & WOLEN LLP
19800 MACARTHUR BLVD.
EIGHTH FLOOR
IRVINE, CA 92612
(949) 757-2800

03 CV 1927 BTM (JFS)

1

## 5.   <u>CONCLUSION</u>

2

3          For the reasons stated above, Provident respectfully requests summary judgment in its

4    favor on Macoviak's breach of contract and bad faith claims.

5

6    Dated:  June 23 2003                         BARGER & WOLEN LLP

7

8                                          By:   _____
                                                 JENNY H. WANG
9                                                Attorneys for Defendants Provident Life
                                                 and Accident Insurance Company and
10                                               UnumProvident Corporation

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BARGER & WOLEN LLP
19800 MACARTHUR BLVD.
EIGHTH FLOOR
IRVINE, CA 92612
(949) 757-2800

                                    -19-                        03 CV 1927 BTM (JFS)